[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 416 
Whether the appellant is entitled to the use of the money paid by the New York Central Railroad Company for the land, condemned for its use during the term of the lease from the respondent to the appellant, depends upon the question whether the land, or the title of the respondent thereto, was embraced in the lease. The land was a strip thirty feet in width, extending easterly from Michigan street to Chicago street, in the city of Buffalo, a distance of about 110 feet. At the time of giving the lease by the respondent to the appellant, the former owned lands adjoining the strip in question on the north, and lying south of Exchange street, upon which was located its passenger depot. The strip in question runs along south of these lands of the respondent, and in the rear of its depot.
About the year 1847 the several owners of the strip in *Page 417 
question conveyed by deed to the Attica and Buffalo Railroad Company the use and occupancy of the strip, to be devoted to the public as a highway and street, which that company agreed to pave in two years from that time. The right of the latter company was afterward acquired by the New York Central Company. That company took possession of the strip and used it for railroad purposes, and never paved or opened it as a street. In the year 1857 the respondent acquired the fee of that portion of the strip condemned, subject to the right of the New York Central Company. The strip continued in the possession of the New York Central Company, the respondent never having had actual possession, but claiming the right to use the same as a street. Before the execution of the lease by the respondent to the appellant, in February, 1863, the former commenced an action against the New York Central Company to compel it to pave and open the street for its and the public use, which action was pending at the time of the execution of the lease; and the New York Central Company had, at the same time, proceedings pending for appraisal of the land and acquiring title for the purposes of its road, free from its obligation to open it as a street. The description of the property demised is as follows: "The railroad of the party of the first part, including its branch freight track, and all the land of the party of the first part situate within and from the city of Buffalo to and within the village of Corning, in the county of Steuben, upon and across which its said railroad, or any part thereof, or its machine shop, warehouses, freight or passenger depots or buildings, are constructed within and between the places aforesaid, and all the right, title and interest which the party of the first part has in and to the use of any wharves or docks in said city, or in or to any other branch track or tracks used by it in connection with its said railroad, together with the appurtenances thereunto belonging during said term."
The case shows that the respondent acquired title to the land lying north of the strip in question, and erected its *Page 418 
depot thereon, relying upon the use of the strip in question as a street; and that the value of the use of such land will be much lessened for the purposes for which it was acquired if deprived of such use of the strip. The benefit to the respondent to be derived from such use, together with the commencement of the suit by it against the New York Central Company to secure such use, show that the respondent acquired its title to the strip to enable it to compel the New York Central Company to pave and open the street over the strip, to enable it to operate its railroad in a more advantageous and convenient manner than it otherwise could do. In other words, that the title to the strip was acquired for the purpose of securing its use as a street in connection with the railroad; and that use was highly beneficial to and convenient for the business of the respondent in the operation of its railroad. It is true that such use had not actually been obtained at the time of the execution of the lease to the appellant; but the right thereto had been acquired, and legal proceedings to enforce it had been instituted and were then pending.
It is not material to determine whether the New York Central Company could have been compelled to pave and open the street; a question somewhat discussed by counsel. As, if it could not, its right of occupying the strip for any purpose would terminate upon its refusal so to do; and thus the estate of the respondent in the land would become absolute, and it could then enjoy it as a way to and from its depot as owner of the fee. Neither is the fact that the respondent had not acquired title to the entire strip, subject to the right of the New York Central Company, at all material. It had acquired title to all that part of it embraced in the present proceeding, and which was sufficient to secure the use of the entire strip as a street, or the damages sustained by being deprived of such use in case of its being taken for other purposes by the New York Central Company. The opinion of the General Term conclusively shows that the strip of land in question cannot pass, under the lease, to the *Page 419 
appellant as appurtenant to the other land demised; that easements or servitudes only can so pass; it being a maxim of the common law that land cannot be appurtenant to other land. But it is equally well settled that the intention of the parties, as ascertained from the language used in the instrument, is to govern their rights; and that, in construing every written instrument, it is proper to look at all the surrounding circumstances, the pre-existing relation between the parties; and then to see what they mean when they speak. (Blossom v.Griffin, 3 Kernan, 569.) Applying this rule to the present case, we find that at the time the respondent gave the lease to the appellant, it had acquired the right to use the strip as a street along side of its passenger depot, and grounds connected therewith, or to its damages if deprived thereof. That such use was convenient and advantageous thereto; that, deprived of such use, the depot and grounds would be of less value for railroad purposes; that the interest in the strip had been acquired for this purpose, and, in case the New York Central Company paved and opened it as a street, was of no value to the respondent for any other purpose. Under these circumstances the respondent leased its railroad, running from Buffalo to Corning, to the appellant. I think this not only included the railroad track and depots, but all land acquired for use in operating the road, the use of which was advantageous and beneficial in connection therewith; the being deprived of which would render the use of the road or any part of it less convenient and valuable.
There is nothing in the residue of the description restricting this general language by the application of the maxim, that the expression of one excludes the other. It is insisted by the respondent that the use of this strip as a street, or otherwise, is not necessary for the use of the railroad. This is true, in the sense of being absolutely necessary, because the road has been, and still is, operated without it. But in the sense in which the word is construed in taking land for the use of roads, under the statute, against the will of the owner, it is necessary, because it appears that the road can be operated *Page 420 
more conveniently and beneficially with than without such use. It was condemned in behalf of the New York Central Company for the reason that its use by that company was more essential to it and the public than to the present parties. The New York Central Company was compelled to pay not only the value of the land taken, but the damages caused thereby to the other lands of the owner. This, in the present case, was the injury to the depot, etc., by being deprived of the use of this strip. It is the lessee and not the lessor that suffers this loss during the term. Upon principles of equity, as well as upon the true construction of the lease, I think the referee and Special Term were right in holding that the appellant was entitled to the use of the money during the term of its lease, and that the General Term erred in reversing the order of the former. The order of the General Term must be reversed, and that of the Special Term affirmed.
All concur.
Ordered accordingly.