## The Indiana Central Canal Co. *v.* The State.

CANAL.—*Sale and Conveyance of Central Canal.—Contiguous Land Set Apart for Canal.*—The Governor and Auditor of State, on behalf of the State in pursuance of authority conferred on them by law, sold and conveyed to the purchaser by their deed, made in conformity with such authority therein referred to, "all the right, title, interest, claim and demand which the State may hold or possess in the Northern Division of the Central Canal, north of Morgan county, * * * and the water-power and appurtenances thereunto belonging, including its banks, margins, tow-paths, side-cuts, feeders, basins, right of way, dams, water-power, structures and all the appurtenances thereunto belonging, to have and to hold the same in as full and ample a manner as the undersigned are authorized by the laws aforesaid to convey the same."

*Held*, in an action by the State against the Indiana Central Canal Company, holding through said deed of conveyance, to recover possession of certain land in the city of Indianapolis, lying contiguous to the portion of the canal conveyed by said deed, that said deed covered any land of the State, so situated, that had been set apart by the State for the use of the canal or water-power in their occupation and enjoyment, or that was necessary to their use and enjoyment.

*Held,* also, that though the State, by the sale of the canal, abandoned it as a proprietor, yet, the course of legislation showing an intent to encourage its completion and use as a canal, and there being nothing in the case showing that the purchaser or purchasers of the several parts were

not to take all that was essential to the use and enjoyment of the whole as a canal, the purchaser of the part in question took the title of land pertaining to the portion conveyed by said deed essential to the use and enjoyment of the canal viewed as a whole and considered as an entirety, though not essential to the complete enjoyment of the isolated portion so conveyed.

*Held*, also, that if the land in question, so lying contiguous to the portion of the canal conveyed by said deed, was set apart by competent State authority for the use of the canal or water-power connected therewith, and it did not appear that the purchaser was notified, before he purchased, that the dedication had been revoked, the State could not, in said action, claim that said land was not essential to the enjoyment of the portion of the canal conveyed by said deed, and the title to said land passed by the deed without reference to the question whether it was essential to the full enjoyment of said portion of the canal.

*Held*, also, that the word "margins," as used in the statutes conferring the authority to sell and convey, and in said deed, in specifying the things included in the sale, should be construed as meaning something distinct from the other terms employed to designate what was to be sold and what was conveyed (as the "banks," "tow-paths," etc.) ; and it should not be interpreted as meaning a mere water-line, but should be regarded as covering any property belonging to the State adjacent and on the margin of the canal, which had been appropriated or set apart or occupied by the State, for canal uses, or was reasonably necessary for such uses.

SAME.—*Statutes Passed at Same Session.*—*Construction of.*—The act of January 19th, 1850, and that of January 21st, 1850, Acts 1850, pp. 21, 22, in relation to the Northern Division of the Central Canal, having been both passed at the same session of the legislature, should be regarded as both standing, to be construed together, the earlier not repealed by the later.

SAME.—*Extraneous Evidence to Apply Deed to Subject-Matter.*—The property not being described by numbers or by metes and bounds, either in the statutes conferring the authority to sell and convey or in the deed of conveyance made in conformity with such authority, extraneous and parol evidence was admissible to ascertain whether a particular piece of property, definitely described and ascertained, constituted a "margin," or "basin," etc.

SAME.—*Principal and Agent.* — *Acts of Special Agent of the State in Excess of Authority.*—*Estoppel* —*Rescission of Contract.*—As, under said statutes, said officers must be regarded as the special agents of the State, with power to sell and convey said property, and as said property could not be precisely identified by reference to the statutes conferring said power, it was the right and duty of said agents to identify and point out to the purchaser the particular property to be sold; and if either of said agents pointed out or designated to the purchaser particular property belonging to the State, as included in or being part of the property to be sold, that would be competent and *prima facie* evidence that it was such, and con-

clusive until shown by the State not to have been such; but the State was not estopped to show that property thus pointed out or designated was not a part of the property which said officers were authorized to sell; and in such case, the purchaser would not be entitled to hold such property, although the State should not rescind the contract and place the purchaser *in statu quo.*

POWER. — *Implied Power.* — *Delivery of Possession.* — The power to sell and convey implies a power to deliver possession of the property to the purchaser.

VENDOR AND PURCHASER.—*Delivery of Key of Premises.*—-The delivery of a key by a vendor to a purchaser, at the conclusion of a treaty for the sale of property, is a symbol indicative of the delivery of the possession of the house or premises purchased, to which the key belongs.

From the Hendricks Circuit Court.

*A. G. Porter, B. Harrison, W. P. Fishback, C. C. Hines, W. H. H. Miller, G. T. Porter, C. Baker, O. B. Hord, A. W. Hendricks, S. H. Buskirk* and *J. W. Nichol,* for appellant.

*J. C. Denny,* Attorney General, and *C. A. Buskirk,* Attorney General, for the State.

WORDEN, J.—This was an action brought by the State against the appellant, in Marion county, to recover a certain piece of land, situate in the city of Indianapolis, bounded on the east by West street, on the west by Blackford street, on the south by Market street, and on the north by the cross-cut of the Central Canal. The venue was changed to the Hendricks Circuit Court, where the cause was tried by jury, resulting in a verdict and judgment for the State, the defendant having unsuccessfully moved for a new trial.

The land, as will be seen by the above description, adjoins the arm of the Central Canal, and was the property of the State, at and long before the date of the deed hereinafter set out. The State executed the following deed:

"This indenture, made this 30th day of June, in the year of our Lord, one thousand eight hundred and fifty-one, between Joseph A. Wright, Governor of the State of Indiana, and Erastus W. H. Ellis, Auditor of said State, of the first part, and Francis A. Conwell, of the second part, wit-

nesseth, that in pursuance of the provision of an act of the legislature of said State, entitled ' An act to authorize the Governor of Indiana to compromise with, and to cause suit to be brought against the lessees of the water-power of the Northern Division of the Central Canal,' approved January 19th, 1850; also an act entitled 'An act to authorize the sale of the Northern Division of the Central Canal,' approved January 21st, 1850, the said Joseph A. Wright and Erastus W. H. Ellis caused an advertisement to be published in the Indiana State Sentinel, in the Indiana State Journal, also in newspapers of general circulation published in the cities of Louisville, Cincinnati, New York, Philadelphia and Boston, at least sixty days before the sale, setting forth the time, place and conditions of such sale, as specified in said act; and did, on the 16th day of November, 1850, at the door of the Capitol, in Indianapolis, sell to George G. Shoup, James Rariden and John S. Newman, of the State aforesaid, all the right, title and interest of the State of Indiana in and to the portion of the Northern Division of the Central Canal situate north of Morgan county, and all the rents which shall become due after the sale of said property, and the water-power and appurtenances thereunto belonging, and all the right, title, interest, claim and demand which the State may hold or possess in such portion of said canal, including its banks, margins, tow-paths, side-cuts, feeders, basins, right of way, dams, water-power, structures, and all the appurtenances thereunto belonging, for the sum of two thousand four hundred and twenty-five dollars, being more than two-thirds of the appraised value thereof, the said Shoup, Rariden and Newman being the highest and best bidders for the same; which said purchase-money, with interest thereon, has been paid into the treasury of the State of Indiana, by the parties aforesaid, as appears by the receipt of the Treasurer of State, No. 7939, bearing date February 7th, 1851; and whereas the legislature aforesaid enacted a joint resolution entitled ' A joint resolution on the subject

of the sale of the Northern Division of the Central Canal,' approved February 7th, 1851, confirming said sale, and directing the Governor aforesaid to convey said portion of said canal, with the rights, privileges and appurtenances thereunto belonging, as sold by him to the purchasers, their heirs and assigns, so soon as said purchasers, their heirs and assigns, shall pay the purchase-money by them severally bid, and executed the bond pursuant to the conditions of sale, to the acceptance of his Excellency, the Governor.

" And whereas the said Shoup, Rariden and Newman, on the 7th day of February, 1851, executed an instrument in writing, and thereby assigned and transferred to Francis A. Conwell, his heirs and assigns, all their right, title and interest in the purchase aforesaid.

"And whereas the said Conwell, on the 30th day of June, 1851, executed and delivered to the Governor aforesaid, the bond spoken of and required in the several acts herein named, to the acceptance and approval of the said Governor.

"Now, therefore, be it known, that by virtue of the powers vested in us, by the acts and joint resolution herein named, we, Joseph A. Wright, Governor of the State of Indiana, and Erastus W. H. Ellis, Auditor of said State, do hereby convey to the said Francis A. Conwell, his heirs and assigns forever, all the property sold, as herein specified, being all the right, title, interest, claim and demand, which the State may hold or possess in the Northern Division of the Central Canal, north of Morgan county, and all the rents which may have become or shall become due, after the sale of said property, and the water-power and appurtenances thereunto belonging, including its banks, margins, tow-paths, side-cuts, feeders, basins, right of way, dams, water-power, structures and all the appurtenances thereunto belonging, to have and to hold the same in as full and ample a manner as the undersigned are authorized by the laws aforesaid to convey the same.

"In testimony whereof, we have hereunto set our hands and affixed the seal of said State, at the city of [SEAL.] Indianapolis, the day and the year first above written.

"JOSEPH A. WRIGHT, Governor.

"ERASTUS W. H. ELLIS, Auditor of State.

'CHARLES TEST, Secretary of State."

The question involved in the case was, whether the title to the property in controversy passed by the deed above set out. If it did not, the State was entitled to recover. If it did, the State was not entitled to recover.

The deed was made in pursuance of two acts of the legislature referred to therein. Acts 1850, pp. 21, 22. The latter act contains the following section:

"That the Governor and Auditor of State be and the same are hereby authorized to make sale and dispose of all the right, title, interest, claim, and demand which the State holds in or to the Northern Division of the Central Canal, situated in the State of Indiana with all the water-power and appurtenances thereunto belonging, and the said Governor and Auditor are hereby authorized to convey the same to the purchaser on behalf of the State, in the name of the State of Indiana, all the right, title, interest, claim, and demand, which the State may hold or possess in such canal: *Provided, however*, that neither the Governor nor Auditor of State shall be authorized to sell said canal for a less sum than two-thirds of the fair appraised value thereof: *Provided*, that the portion of the canal and appurtenances in the county of Morgan shall be appraised, offered, and made sale of, as a separate and distinct division of the said property."

It is not disputed by the appellee that the Governor and Auditor of State had power to sell and convey the canal, with all the water-power and appurtenances thereunto belonging, but she insists that the property in question was no part of the canal or water-power or appurtenances. The appellant, however, claims that the property in controversy was, before the sale, dedicated and set apart by the State for the

uses and purposes of the canal and water-power, and was necessary to the full and complete enjoyment thereof, and therefore, that the title to it passed by the deed.

The appellant asked the following instruction without the proviso, which the court refused as asked, but gave it with the proviso, to which the appellant excepted, viz. :

"XV. If the State had once set apart the parcel of land in controversy to provide sites for the use of hydraulic power, or for warehouses or docks, or for any other canal uses, the land so set apart must be held to have passed by the sale made to Conwell, unless there is clear evidence to show that Conwell, before he purchased, was notified that the dedication had been revoked; provided, that the land was essential to a full enjoyment, by the purchasers, of the part of the canal they bought."

The court gave, of its own motion, the following instructions, amongst others, to which the appellant excepted, viz. :

"8. In determining whether the State ever set this property apart, or reserved it for canal purposes, it is proper to consider the state of the canal as to its contemplated extent and business necessities at the time the State was buying property along its line for these purposes, and all facts tending to show that the land was so held by the State, and the fitness and convenience of this particular property for canal uses.

"9. But something more than this the defendant must prove, in order to show that the disputed property was necessary to the full enjoyment of the thing the purchasers at the sale bought, and which is designated in the conveyance. They did not buy the whole canal in its *integrity*, as projected by the State, but only a separate division of it. Obviously, property there may have been, which had been held by the State and set apart for contemplated canal uses, which would have been not only convenient, but necessary for a complete beneficial use of the whole projected canal, in connection with a great system of state canals, which would not be at all essential to complete enjoyment of the

isolated section of one canal bought at the sale by these parties, in all the uses of which in itself it was capable.

" 10.  In passing upon the question, it will be your duty to consider that portion of the canal sold in relation to and in comparison with the canal as a whole, as originally projected, as part of the general system of internal improvements, and to remember that it is the test whether the land in question was essential to the full enjoyment of the portion sold, and not to the full enjoyment of the canal as a whole, and connected with a great system of water communication.   This is the vital question upon which the case turns.   What the purchasers paid is not at all important.

" 15.  Therefore, if you believe that the land in dispute, at the time of the sale to the parties under whom the defendants claim, had been set apart by competent state authority for the use of the canal, and was then so held; and further, that the land in dispute was essential to the complete use and enjoyment of that part of the Northern Division of the Central Canal sold to these parties, that is, that the thing sold could not be completely enjoyed without it, then you should find for the defendants.   But should you find that it was not so set apart, or, being so set apart, was not so essential to the full enjoyment of what those purchasers bought, then the title of the State remains good, and the plaintiff should recover against the canal company."

The deed does not, in terms, describe any particular land by metes and bounds or by numbers, but its language is broad enough to cover any land that had been set apart by the State for the use of the canal or water-power in their occupation and enjoyment, or that was essential to their use and enjoyment.   *Sheets* v. *Selden's Lessee,* 2 Wal. 177.   As to what is to be deemed essential or necessary, see *Matter of The N. Y. C. R. R. Co.,* 49 N. Y. 414; *Prather* v. *The Jeff., Mad. & Ind. R. R. Co.,* 52 Ind. 16.

It follows, that if the land in controversy had been set apart by the State for the use of the canal or water-power in their occupation and enjoyment, or was essential to their

use and enjoyment, it passed by the deed, and the State had no right to recover.

We think the charges above set out, as given by the court of its own motion, involve an untenable legal proposition. As we understand the proposition involved in the charges, it is this, as applied to the case: that although the land in dispute may have been essential to the use and enjoyment of the canal, viewed as a whole and considered as an entirety, yet if it was not essential to the complete enjoyment of the isolated portion conveyed by the deed in question, the title to it did not pass by the deed.

It is argued, in support of the charges, that when the State sold out the canal, she abandoned it as a canal; that she did not sell it to be used by the purchaser as a canal; and therefore that the purchaser did not take all that might be necessary to its use as a canal in its entirety. The State, doubtless, when she sold the canal, abandoned it as a proprietor; but we find nothing in her legislation showing that she had abandoned the hope or expectation that it might be finished and operated by the purchaser or others. There is nothing in the case showing that the purchaser or purchasers of the several parts were not to take all that was essential to the use and enjoyment of the whole as a canal. An act was passed January 28th, 1842 (Acts 1842, p. 3), which was in force, so far as we are advised, at the time of the passage of the acts authorizing the sale, which contemplated a surrender by the State of her internal improvements, including the canal in question, to corporations, and the completion and operation of the same. Then, soon after the passage of the acts authorizing the sale, viz., on June 17th, 1852 (1 G. & H. 205), an act was passed authorizing all persons, corporations or associations who had purchased from the State any of the unfinished canals of the State, or any part of either of them, to proceed to the completion of such canal in whole or in part, etc. These acts must be taken *in pari materia,* and they show a clear intent on the part of the legislature, while the State abandoned this canal as a proprie-

tor, by the sale thereof, to encourage the completion and use of the same as a canal.

The extraordinary development of the railroad system of transportation, since that time, may have disappointed the expectations of the State, and, indeed, of the purchasers of the canal, and rendered the latter in a measure useless; but this cannot change the situation of things as they stood at that time.

It seems to us, that when the State sold the canal, although sold in parcels, she sold everything that was necessary to the use of it as a canal in its entirety, the same as if the whole of it had been sold together, and to one purchaser. The several parts of a thing must be equal to the whole. When the purchasers bought the part of the canal in question, they bought it with the right to use it in connection with the other part, and took whatever there was pertaining to the part which they bought which was necessary to its use in connection with the other part.

The charges given on this point were, in our opinion, erroneous.

The fifteenth charge given contains another erroneous proposition, as we think, in that the jury were told that if the land in dispute had been set apart by competent state authority for the canal, but was not essential to the enjoyment of what these purchasers bought, then the title of the State remained good, and she could recover.

The land in controversy lies contiguous to the portion of the canal conveyed by the deed of the Governor and Auditor, hereinbefore set out, and if it had been set apart by the State for the use of the canal, it passed with that part of the canal. If it was thus set apart by the State, for the use of the canal, we think the State cannot say that it was not essential to the enjoyment of that portion of the canal. If it was essential to the enjoyment of any part of the canal, it was that part conveyed by the deed. That it was thus essential, was admitted by the State in setting it apart for that purpose, if she did so set it apart. The purchasers hav-

ing bought this portion of the canal, with this piece of land so set apart for its use, the State cannot now claim, any more than could a private individual, that it was not essential to the enjoyment of the part of the canal for the use of which it was set apart.

The charge asked by the appellant should, as we think, have been given without the proviso.

There was evidence tending to show that the land in controversy had been set apart by the State for the use of the canal or water-power connected therewith, as was assumed by the court in giving the charge with the proviso. But the proviso destroys the vitality of the charge.

If the land in controversy had been thus set apart by the State for the use of the canal, as is hypothetically assumed in the charge, the title passed by the deed, without reference to the question whether it was essential to the full enjoyment of the part of the canal purchased.

As before observed, if the State set apart this piece of land, lying where it does, for the use of the canal, it was set apart for the use of.this portion of the canal, and she cannot now be heard to say that it was not essential to the enjoyment of this portion.

It was shown, on the trial, that at and before the sale, the governor pointed out and designated the piece of land in controversy as being a part of the canal property, and declared that it was being sold with it. The appellant makes the point that this estops the State to set up now that the property did not pass by the sale and deed. The views of the court not being entirely harmonious on this point, no opinion is expressed in relation to it, as the judgment below will have to be reversed for the reasons above stated, and yet to be stated.

On the trial, Daniel Yandes was introduced by the State as a witness, who testified that he knew Jesse L. Williams, who was the principal engineer of the canal at the time of a conversation between him and Mr. Williams.

Statements of Mr. Williams to the witness, not explana-

tory of any thing Mr. Williams was then doing as such engineer, but as to what he had done as such, and his opinions in relation to several matters, were given in evidence, over the objection and exception of the appellant. The admission of this evidence was clearly erroneous. The mere opinions of Mr. Williams, expressed to the witness, could not be competent for any purpose that we can conceive of. The statement of what he had done as the chief engineer of the canal, viewing him as the agent of the State, could not be competent, because it was no part of the *res gestœ.*

The statements were not made concurrently with the act done and explanatory thereof, but afterwards, and were inadmissible. 1 Greenl. Ev., sec. 113.

The judgment below is reversed, with costs, and the cause remanded for a new trial.

## ON PETITION FOR A REHEARING.

WORDEN, C. J.—The appellee has filed a petition for a rehearing, asking us to reconsider the points heretofore decided; and the parties ask us to pass upon other questions arising on the record, not decided in the former opinion. In again looking through the case, we are satisfied with the decision already pronounced, but we proceed to consider the other questions involved.

In the original opinion, we set out a part of the act of January 21st, 1850, authorizing the sale of the canal, but we did not set out any part of the act of January 19th, 1850.

The third section of the latter act is as follows:

"The Governor is hereby further authorized to sell all the right, title, and interest of the State of Indiana, in and to the Northern Division of the Central Canal, and all the rents which shall become due after the sale of said property, and the water-power and appurtenances thereunto belonging, to the highest bidder therefor, on the terms and conditions and in the manner following:

"One-fourth of the purchase-money to be paid down at the

time of the sale, and the payment of the residue to be secured by approved security, and to be paid in equal annual instalments thereafter.  The purchaser or purchasers shall execute to the State of Indiana, and deliver to the Governor a bond with ample security conditioned to indemnify the State forever thereafter against all damages, claims, or demands, which the State may be subjected to or liable for, on account of any deficiency in the supply of water to such lessees, their heirs or assigns.  When the said one-fourth of the·purchase-money shall be paid, and the residue thereof secured to be paid to the satisfaction of the Governor as above provided, and the said bond executed and delivered, the Governor of Indiana shall, in the name and under the seal of the State, execute and deliver to the said purchaser or purchasers a deed for the bed for the Northern Division of the Central Canal, including its banks, margins, tow-paths, side-cuts, feeders, basins, right of way, dams, water power, structures, and all the appurtenances thereunto belonging."  Acts 1850, p. 21.

The appellee claims that the act of January 19th was repealed by that of January 21st.  We think, however, as they were both passed at the same session of the legislature, they are to be construed together, and both stand.  See *Sheets* v. *Selden's Lessee*, 2 Wal. 177.

Comparing the language of the deed with the acts authorizing the sale, it will be seen that the deed follows closely and does not exceed the power of sale conferred by the two acts.  The deed, it will be seen, purports to convey "all the right, title, interest, claim and demand which the State may hold or possess in the Northern Division of the Central Canal, north of Morgan county,  *  *  *  and the water-power and appurtenances thereunto belonging, including its banks, margins, tow-paths, side-cuts, feeders, basins, right of way, dams, water power, structures, and all the appurtenances thereunto belonging."

Having thus seen that the sale did not exceed the terms of the power conferred, we proceed to consider the charges

asked and refused, which raise the main questions not heretofore decided.

The appellant asked, and the court refused, the following charges:

"V. The legislation upon the subject of the sale of the Northern Division of the Central Canal, north of Morgan county, constituted the Governor and the Auditor of State the agents of the State to make such sale, and to put the purchaser in possession of the property sold, and such agency continued until the sale was completed by putting the purchaser in possession.

"VI. The agency of the Governor and Auditor imposed upon them the duty of ascertaining what property and rights they were to sell, and to inform persons proposing to purchase what such rights and property consisted of, and the character and location of the property.

"VII. To enable you to ascertain what property and rights the State sold and conveyed to Conwell, it will be your duty to remember and consider all declarations made by the Governor and the Auditor of State, in the course of the execution of their agency, to persons proposing to become purchasers, in respect to what property and rights would be sold and would pass to the purchaser.

"VIII. Also all acts of theirs in execution of their agency, such as pointing out (if they did so) upon a map or upon the ground, to persons proposing to purchase, the property intended to be sold.

"IX. In determining what property and rights the State sold and conveyed to Conwell, it is proper for you to consider whatever statement, if any, the Governor and Auditor made to Conwell after the sale, but before he was put in possession, or which accompanied the act of putting him in possession, in respect to the property and rights purchased by him.

"IX (a). The several acts of the legislature, authorizing the sale of the Northern Division of the Central Canal by the Governor and Auditor, including its banks, margins,

The Indiana Central Canal Co. *v.* The State.

tow-paths, side-cuts, feeders, basins, right of way, dams, water-power, structures, and all appurtenances thereunto belonging, devolved upon the Governor and Auditor the duty of pointing out and designating to persons proposing to purchase the property so intended to be sold and conveyed; and if, in the discharge of their duties, they, or either of them, pointed out to a proposed purchaser the land in dispute as a portion of the property to be sold and conveyed; and if said land was so situated and so occupied with reference to said canal that it might reasonably be supposed to be embraced within the descriptive terms used in said laws; and if the purchaser, being so informed, believed that he was buying the land in dispute in this cause, together with the other property, he would be entitled to hold the same, unless the State, within a reasonable time after said sale, either rescinded said contract, or offered to rescind the same, entire, and place the purchaser *in statu quo* by returning the purchase-money, surrendering and cancelling his bond, etc. The State must ratify the contract as a whole or rescind it as a whole. Whatever rights were acquired by Shoup or by Conwell passed to their assignees.

"X. The delivery by the Auditor of State to Conwell or his agent, if proved, of the key of the building situate upon the parcel of ground in controversy, and its acceptance by him or such agent is proper to be considered by you in determining whether said parcel of ground passed under the deed from the State.

"XI. The delivery of a key by a vendor to a purchaser, at the conclusion of a treaty for the sale of property, is a symbol indicative of the delivery of the possession of the house or premises to which the key belongs.

"XII. The Governor having been directed by law to execute and deliver to the purchaser a ' deed for the bed for the Northern Division of the Central Canal, including its banks, *margins*, tow-paths, side-cuts, feeders, basins, right of way, dams, water-power, structures, and all the appurtenances thereunto belonging,' these words contain a specifi-

cation of things included in the sale, and are each to be so construed as, if possible, to have effect, and the word '*margins*' is to be interpreted as embracing something distinct from the banks, tow-paths, side-cuts, feeders, basins, right of way, dams, water-power and structures, and to embrace something adjacent to the canal, but distinct from these, and the purchaser had a right to suppose, if not otherwise informed, that any property belonging to the State adjacent and on the margin of the canal, which had been appropriated or set apart or occupied by the State for canal uses, or was reasonably necessary for such uses, was included within his purchase.

"XXI. In respect to any land which Shoup, who purchased at the auction sale, might reasonably have supposed, from its being adjacent to or in close proximity to the canal, might be convenient for any use for which the canal was built, the statements, if any, made by the Governor, while engaged in crying the sale, or just before, importing that such property was to be sold at such sale, if Shoup relied upon such statements, and upon the faith of them made such purchase, worked an estoppel against the State, and the State cannot now be heard to deny that the statements so made were true.

"XXII. So, also, in regard to like statements, if any, made by the Governor or by Ellis, the Auditor of State, to Conwell, before Conwell made his purchase from Shoup, and with a view to such purchase, in respect to the property which passed to Shoup under his purchase from the State, these statements worked an estoppel against the State, and she cannot be heard to deny that the statements so made were true."

The property is not described by numbers or by metes and bounds, either in the acts of the legislature or in the deed executed by the Governor and Auditor. The deed was to convey "the bed for the Northern Division of the Central Canal, including its banks, margins, tow-paths, side-cuts, feeders, basins, right of way, dams, water-power, struc-

tures," etc., and, of course, these things constituted what were to be sold.

Now, it is very apparent that what constituted some, at least, if not all of these things, thus directed to be sold, must depend upon extraneous evidence. The purchaser of the canal could not claim every open ditch because he had bought the bed of the canal. In a controversy between the purchaser and a third person, it might become material to show where the bed of the canal was located. This, however, could not be done either from the laws or the deed in question. So, also, whether any particular piece of property, definitely described and ascertained, constituted the margins, basins, etc., could not be ascertained from the statutes or the deed. Resort would have to be had to extraneous evidence, to show that such particular property did constitute a margin or basin, etc.

We think the case falls within that class in which it is held that extraneous and parol evidence is competent, not to contradict or extend the terms of the deed, but to apply it to the subject-matter. See *Reed* v. *Proprietors, etc.*, 8 How. U. S. 274; *Sargent* v. *Adams*, 3 Gray, 72; *Bertsch* v. *Lehigh, etc., Co.*, 4 Rawle, 130; *Noonan* v. *Lee*, 2 Black, 499; *Heaston* v. *Squires*, 9 Ind. 27; *Bell's Adm'x* v. *Golding*, 27 Ind. 173. See, also, cases bearing on the proposition collected in *Baldwin* v. *Kerlin*, 46 Ind. 426.

This being the character of the laws in question, it is proper to inquire what were the powers and duties of the Governor and Auditor in making the sale. They must be regarded, we think, as the special agents of the State, with power to sell and convey the particular property in question. This includes everything that was necessary and proper in making the sale. But as the property authorized to be sold could not be precisely identified by reference to the statutes giving them authority to sell, the question arises whether they were authorized to identify and point out to the purchaser the property to be sold. We think that upon a fair construction of the statutes it was their right and their duty

to do so, in the proper discharge of their functions as such special agents.

Purchasers, by looking at the statutes, could see that the Governor and Auditor were authorized to sell and convey the canal bed, including its banks, margins, tow-paths, etc., but they could not be supposed to know what particular property was included in these specifications. They could know that whatever was included in the terms was to be sold; but they could not know definitely what property was included in the terms. The interest of the State required that the property should be sold for the best price it could be made to bring. This could not well be effected, unless the agents of the State had the power to point out to the purchasers, and let them know precisely and specifically what was to be sold. And we are of opinion that, if the Governor or Auditor pointed out or designated to the purchaser or purchasers particular property belonging to the State, as included in, or being a part of, the property to be sold, that would be competent and *prima facie* evidence that it was such, and conclusive until shown by the State not to have been such.

We are furthermore of the opinion that if the Governor or Auditor thus pointed out and designated property as included in, or being a part of, the property to be sold, which was really not so, and not included in the statutory designation of what was to be sold, the State is not estopped to show the facts by proof that the property thus pointed out or designated was no part of what was to be sold. Such act of the agents of the State would be entirely beyond the scope of their authority, for which the State would be in no way bound. While the Governor and Auditor had power to point out to the purchasers the property which they were authorized to sell, they had no power or authority to point out to the purchasers other property not included in the statutory power of sale, as the property to be sold.

The State is bound by the acts of her agents, when they confine themselves within the limits of the authority confer-

red; but when they transcend the authority conferred, their acts, thus in excess of their authority, are not binding upon the State.

The Governor and Auditor had authority to point out and designate the property which they were authorized to sell; and if they pointed out or designated property to be sold, it will be presumed to have been such as was embraced in the terms of the laws authorizing the sale, until the contrary is shown. But the State will not be estopped to show the contrary, because the selling of property not authorized by the statutes would be an act as destitute of authority as if nothing had been authorized to be sold. By such sale the State could not be bound, nor could such sale have the effect of estopping the State to show the truth of the matter. Story on Agency, sec. 307; *Lee* v. *Munroe*, 7 Cranch, 366; *Johnson* v. *United States*, 5 Mason, 425; *United States* v. *Martin*, 2 Paine, 68.

Keeping in view these propositions, applicable to the case, we proceed more directly to the consideration of the charges asked and refused.

The fifth charge, we think, should have been given. The power to sell and convey property implies a power to deliver possession.

It follows, from what has already been said, that the sixth, seventh, eighth, ninth, tenth and eleventh charges were proper and should have been given.

Charges IX. (a), XXI. and XXII. were correctly refused. Charge IX. (a) is based upon the theory that, if the land in dispute was no part of what was authorized to be sold, yet if the Governor or Auditor pointed it out to the purchaser as such, in the manner stated in the instruction, the purchaser would be entitled to hold it, unless the State rescinded the contract and placed the purchaser *in statu quo* by returning the purchase-money.

This proposition cannot, in our opinion, he maintained.

If the Governor and Auditor, as the agents of the State,

pointed out and sold land not authorized by the statutes in question to be sold, the act was done entirely without authority, and the State stands in no worse condition, nor the purchaser in any better condition, than if the agents had had no authority to sell any land whatever. Such acts of her agents, totally unauthorized, could not bind the State in any respect.

What we have already said sufficiently shows the objectionable character of charges twenty-first and twenty-second.

We return to charge number twelve. We concur with counsel for the appellant in the proposition that the word "margins," as used in the law and in the deed, not only means something, but it means something more than is expressed by the other terms employed to designate what was to be sold, and what was conveyed.

The counsel for the appellees claim, as we understand their brief, that the word means a water-line, or a mere line. They say: "Counsel for appellant argue that the word 'margin' does not mean the water-line, or any other mere line. Webster so defines the word. No other or different definition can be found." There are, however, broader and different definitions given to the word by the lexicographers. Thus, one of the definitions given to the word by Webster is the following: "Specifically, the part of a page at the edge left uncovered in writing or printing; an uncovered, bordering space." The word would have no significance whatever, if its sense were restricted to a mere line or water-line. Used in that sense, it would convey nothing, for a line has no breadth. We think it was used in a sense quite broad enough to cover the property mentioned in the instruction, viz., "any property belonging to the State, adjacent and on the margin of the canal, which had been appropriated or set apart or occupied by the State for canal uses, or was reasonably necessary for such uses." The purchaser not only had the right to suppose that such property was included within his purchase, but, in our opinion, such prop-

erty passed to him by his purchase. The instruction should have been given.

The court gave some instructions at variance with the views which we entertain of the case, as hereinbefore expressed, but we deem it unnecessary to set them out or to extend this opinion further by discussing them.

We have thus passed upon the important questions arising in the cause, as counsel have requested.

Petition for a rehearing overruled.