The Louisville, New Albany and Chicago Railway Company *v.* Etzler.

No. 13,456.

THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY
COMPANY *v.* ETZLER.

RAILROAD.—*Injury to Animals.*—*Farm Crossing.*—*Negligence.*—In the absence of negligence on its part, a railroad company is not liable for injuring animals which enter upon its track at a private farm crossing.

SAME.—*Finding as to Character of Crossing.*—A finding that animals entered upon the railroad track "at a point where the railroad crosses a cartway, or private way, known as McQuiddy's Crossing," is equivalent to a finding that the entrance was effected at a private farm crossing.

From the Jackson Circuit Court.

*G. W. Easley, G. R. Eldridge, D. M. Alspaugh* and *J. C. Lawler,* for appellant.

*S. B. Voyles* and *H. Morris,* for appellee.

OLDS, J.—This is an action brought by the appellee against the appellant for the value of two mules which, it is alleged in the complaint, entered upon the railroad track of the appellant at a point where it was not fenced, but might have been fenced, and while upon the track were run against and over by an engine and train of cars run and operated by the employees of the appellant, and one of them was killed and the other wounded and greatly injured, and that they were each of the value of $150.00, to the damage of the appellee in the sum of $250.00.

The cause was tried by the court without the intervention of a jury. The court made a special finding of facts, and stated its conclusion of law thereon.

The special finding of facts and conclusion of law are as follows :

" 1st. The plaintiff is a citizen of Washington county, Indiana, and on the 12th day of October, 1885, was the owner of the two mules described in the complaint, and that on said

12th day of October, 1885, the defendant was and now is a railroad corporation, owning and managing the Louisville, New Albany and Chicago Railway, which railway runs in and through said county of Washington.

" 2d. And on said day a train owned and run by said defendant upon said railway, and controlled by the employees and servants of said defendant, ran against and upon said mules, which had entered in and upon the track of said defendant's road, and killed one of said mules and so injured the other as to render it worthless.

" 3d. That said mules entered upon the track of defendant's road at a point in said county where said railroad crosses a cart-way, or private way, known as McQuiddy's Crossing, and from said crossing passed east upon said track.

" 4th. That there were no cattle-guards at said crossing, or any other obstacle to prevent said mules from passing from said private way to and upon said railroad track.

" 5th. The railroad, at the point where the mules entered, runs very nearly east and west, and the mules went eastwardly after they entered upon the track.

" 6th. That said mules, after entering upon said track, grazed along the same for some time and then ran rapidly eastwardly until they came to the cattle-guard across said railroad at Garrott's farm in said county, which cattle-guard the mules got over, and when east of said cattle-guard they were in a space enclosed by fences on each side and a cattle-guard at each end of said fences, which fences and cattle-guards enclosed said railroad. That the two cattle-guards on the Garrott land are between one quarter and a half mile apart.

" 7th. At a point forty or forty-five rods from the west cattle-guard on Garrott's land, a train on said defendant's road overtook, struck and killed one of said mules, which mule was of the value of one hundred and twenty dollars. The train that struck said mule was going south.

" 8th. That about forty rods from the point where the

first mule was struck, and at the east cattle-guard, the second mule was struck by a train of defendant and carried over the cattle-guard, which mule was crippled by such collision with the train in such manner as to render it of no value. That said mule, before said injury, was of the value of one hundred and thirty dollars.

" 9th. That at the west cattle-guard at Garrott's there is a highway crossing said railroad, directly west of said cattle-guard. That said cattle-guards were in good repair and were connected by wing fences to the fences running on each side of said railroad between said cattle-guards.

" 10th. That on the night said mules were killed and injured, four trains, two passenger and two freight trains, went south upon said railroad, and over the portion of the road where said mules were struck by the engine or cars ; said passenger trains were about one half hour apart. That said mules escaped from the enclosure of the plaintiff the night they entered upon said track.

" 11th. That said mule was killed and the other injured in Washington county, Indiana, were the property of the plaintiff, and at the place where said mules entered upon the track of defendant it was not, but might have been, securely fenced, and said mule was killed and the other injured by a train of cars belonging to said defendant and running upon said defendant's road.

" And as a conclusion of law the court states upon the facts so found that said plaintiff is entitled to recover the sum of two hundred and fifty dollars."

The appellant excepted to the conclusion of law, and assigns as error that the court erred in its conclusion of law.

By the act of the Legislature, approved April 8th, 1885, persons owning tracts of land separated by the right of way of a railroad company are authorized to construct and maintain wagon and drive-ways across such right of way of said company, and by said act railroad companies are exempted from liability for damages for animals killed or injured on

the track of such railroad by the cars or locomotives running on the railroad, if the animals entered upon the track of such railroad at such private roadway, unless it shall be proven that such killing or injury was caused by the negligence of the servants of the company owning or operating such railroad. True, the language of the act is, "if such animal entered upon the track of such railroad through such gates," and the act provides that the land-owner shall erect and maintain substantial gates and keep them securely locked when not in use; but the erection of the gates and keeping them locked are obligations imposed on the land-owner, and for the violation of which he is liable. The absolute right to construct and maintain a private crossing is given to the land-owner, and the right of the railroad company to have exclusive control of its right of way and fences is diminished and taken away to that extent. Having no control over its right of way to prevent or control the construction and use of farm crossings, it is exempted by such act from liability for damages for animals killed or injured, if they enter upon the railroad through such private crossings, whether there are any gates erected through which the animals pass or not, unless the killing or injury is caused by the negligence of the servants of the company. These crossings are authorized to be constructed along the line of the railroad where the track may be securely fenced, and it constitutes an exception to the liability of a railroad company for stock killed upon the track where such stock entered upon the track where it was not securely fenced, and where it might have been so fenced. Of course, if there was negligence on the part of the railroad company or its employees in properly keeping in good repair any portion of the fence it was the duty of the company to keep in repair, and by reason of such negligence the animals entered upon the track through or across such defective fence, the company would be liable. We have said this much on the question of the statute, for the reason that it is contended by counsel for ap-

pellee that, unless it affirmatively appears that the animals entered upon the track through gates at the private crossing, the company is liable. It is contended that it does not so appear by the special findings in this case, and that the special findings in this case do not show an entry of the animals through such a crossing as is contemplated by the statute of 1885.

It appears from the special findings of facts in this case, that the mules entered upon the track at a point where the railroad crosses " a cart-way or private way, known as Mc-Quiddy's crossing." The construction we place upon this finding is, that it was at a private farm crossing, such as is authorized by the statute, where the mules entered upon the track. No other crossings are permitted by law, except public streets and highways. The crossing is not designated in the finding by the same term used in the statute. The statute uses the words "wagon and drive-ways." A "private way or cart-way" means, as we think, a "drive-way," and the special findings do not show that the servants of the company were guilty of any negligence which caused or contributed to the killing of the mules. *Hunt* v. *Lake Shore, etc., R. W. Co.*, 112 Ind. 69.

We are, therefore, of the opinion that the facts found by the court did not entitle the appellee to recover, and we might add further, that, independently of the question of the mules entering upon the track at a private crossing, the facts found show that after the mules entered upon the track, they, of their own volition, strayed along the track until they came upon a public highway where the railroad company was not required to fence its track, and from such highway the mules, without being driven by approaching locomotives or cars, or by reason of any fault on the part of the railroad company or its employees, of their own accord entered upon the track where it was properly and securely fenced, crossing over a proper cattle-guard, which was at the time in good condition. To say the least, these facts ren-

der the appellee's right to recover very doubtful; but having to reverse the judgment on the other questions, it is not necessary to pass upon this.

The only exception reserved and error assigned is as to the conclusion of law stated by the court, and it would seem that the statute exempting the appellant from liability was not considered in the trial of the cause. For that reason the facts may not have been so fully stated by the court as they would have been had the court at the time had in mind the statute, and the findings of fact may convey a different idea to this court than was intended by the court trying the cause. We are of the opinion that justice will be best subserved by ordering a new trial in this cause. *Buchanan* v. *Milligan*, 108 Ind. 433.

The judgment is therefore reversed, at the costs of appellee, with instructions to the court below to set aside the judgment and grant a new trial, and for further proceedings not inconsistent with this opinion.

