Filed Oct. 12, 1887.

No. 13,604.

## HUNT v. THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY.

RAILROAD. — *Private Farm Crossings. — Railroad Company not Liable for Injuries to Animals Going Upon Track at Such Points.—Statute.*—Under the acts of April 8th and 13th, 1885, a railroad company is not liable, in the absence of negligence, for the injury or killing of animals going upon its track through gates at private farm crossings, whether such crossings were constructed prior to those acts, or under the power given.

by the first section of the act of April 8th, or since the passage of those acts.

STATUTE.—*Constitutional Law.*—*Fifth Section of Act of April 13th, 1885, Constitutional.*—The 5th section of the act of April 13th, 1885, which provides for the fencing of rights of way by railroad companies, the construction of cattle-guards, etc., is valid and constitutional, being sufficiently connected with the subject as expressed in the title.

SAME.—*Construction of.*—In the construction of statutes the intention of the Legislature must govern, and, in ascertaining that, the courts will look to the letter of the statute, to the statute as a whole, to the circumstances under which it was enacted, to the old law, if any, to the mischief intended to be remedied, and all like matters, and will, as far as practicable, make such application of the provisions of the statute as will best promote the object of its enactment.

From the LaPorte Circuit Court.

*J. H. Bradley,* for appellant.

*J. H. Baker,* for appellee.

ZOLLARS, C. J.—The material facts in the case, as stated in the pleadings, and found specially by the court below, are these : More than twenty years before the cause of action, as relied upon by appellant, accrued, the appellee railway company, by appropriate condemnation and appropriation proceedings, under the statute then in force, acquired a right of way through the lands then and now owned by B. C. Bowell, and constructed its railway thereon. On the lands of Bowell there is a farm crossing and two gates, which were constructed by the railway company about twenty years ago for his use and convenience, and which have been kept in repair by the railway company since their construction, without any contract or agreement on its part so to do.

Appellant is, and for some years has been, the owner of land adjoining that owned by Bowell. These tracts of land were separated by a partition fence sufficient to turn live stock. On the night of the 23d of March, 1886, appellant's horses were upon his pasture land. On that night a portion of the partition fence was thrown down by a storm, and three of the horses went through one of the openings on to the land

of Bowell, and from there through one of the farm gates, which had been left open by some unknown person, on to the railway, and were there killed by a train of appellee's cars. The railway through the land of Bowell was securely fenced at the place where, and at the time, the horses entered upon it, except in so far as the leaving of the gates open at the time and in the manner above stated rendered it insecurely fenced.

Upon the foregoing facts the court below concluded as a matter of law that appellee is not liable, and rendered judgment accordingly. From that judgment appellant prosecutes this appeal, and claims that the court below erred in its conclusions of law, and in its rulings upon the pleadings, which presented the same question.

The liability of the railway company, under the facts pleaded and found by the court, is dependent upon the construction, scope and effect to be given to the acts of April 8th and 13th, 1885. Acts 1885, pp. 148, 224.

Acts were passed by the Legislature in 1852, 1853 and 1863, making railway companies liable for animals killed upon their tracks. 1 R. S. 1852, p. 426; 1 G. & H., p. 522; 1 R. S. 1876, p. 751.

The first section of the act of 1863 was amended in 1877, but in no regard material here. Acts 1877, Special Session, p. 61.

The act as so amended was carried forward into the revision of 1881. R. S. 1881, section 4025, *et seq.* In each of the acts there was a section providing that the act should not apply to any railway " securely fenced in " and the fences properly maintained by the company. Such was the statute prior to the acts of 1885.

The necessity resting upon railway companies to construct and maintain fences in order to escape the liability imposed by the statutes prior to those of 1885, the sort of fences required in order to escape such liability, the localities where fences might be dispensed with without incurring such liability, and the liability of such companies where animals

entered upon the track through gates at farm crossings and were killed or injured, have been settled by numerous judicial interpretations of those several statutes.

Construing those statutes, it was held that where a person, through whose land a railway was constructed, agreed to build and maintain fences along the right of way, the road would, as to him, be regarded as fenced, and that if he failed to build and maintain such fences, and his animals passed to the track and were killed, he could not recover from the railway company on the ground that it had not fenced its track as required by the statute. *Terre Haute, etc., R. R. Co.* v. *Smith,* 16 Ind. 102; *Fort Wayne, etc., R. R. Co.* v. *Mussetter,* 48 Ind. 286; *Bond* v. *Evansville, etc., R. R. Co.,* 100 Ind. 301, and cases there cited. And so it was held, that where a railway company had securely fenced its track, and permitted an adjoining land-owner to erect in such fence draw-bars and gates for his own convenience in crossing the road, and by reason of the neglect of such land-owner to maintain such bars or gates, his stock passed to and upon the track and was killed or injured, the company was not liable for the damages sustained, nor was it liable to the tenant of such land-owner, whose stock passed through such gate to the track and was there injured or killed. *Indianapolis, etc., R. R. Co.* v. *Shimer,* 17 Ind. 295; *Bond* v. *Evansville, etc., R. R. Co.,* *supra,* and cases there cited; *Louisville, etc., R. W. Co.* v. *Goodbar,* 102 Ind. 596.

It was further held that an adjoining land-owner, for whose benefit a private crossing was constructed and maintained by the railway company, could not recover against the company under the statute, where his stock passed to the track through the gates of such crossing which he had neglected to keep closed. *Evansville, etc., R. R. Co.* v. *Mosier,* 101 Ind. 597; *Wabash R. W. Co.* v. *Williamson,* 104 Ind. 154.

It was for a time held, that, under such circumstances, the railway company was not so liable to such land-owner, nor to any other person whose stock entered upon the track through

such gates. *Indianapolis, etc., R. R. Co.* v. *Adkins,* 23 Ind. 340; *Indianapolis, etc., R. R. Co.* v. *Adkins,* 23 Ind. 345; *Indianapolis, etc., R. R. Co.* v. *Petty,* 25 Ind. 413; *Bellefontaine R. W. Co.* v. *Suman,* 29 Ind. 40.

So far as those cases exempted railway companies, under such circumstances, from liability to others than those for whose convenience such crossings and gates were constructed and maintained, they were doubted, and virtually overruled by the case of *Cincinnati, etc., R. R. Co.* v. *Ridge,* 54 Ind. 39. Since the decision of that case until the present time, it has been held that, while railway companies were not liable, under the statutes prior to those of 1885, for the injury or killing of animals of adjoining land-owners for whose convenience private crossings and gates were constructed, where the animals passed 'to the track through such gates, which such land-owner failed to keep closed, they were liable to other persons whose animals might pass through such open gates to the track and be there injured or killed. *Indianapolis, etc., R. W. Co.* v. *Thomas,* 84 Ind. 194; *Bond* v. *Evansville, etc., R. R. Co., supra; Evansville, etc., R. R. Co.* v. *Mosier, supra; Louisville, etc., R. W. Co.* v. *Goodbar, supra; Wabash R. W. Co.* v. *Williamson, supra.*

Such was the law at the time the acts of 1885 were passed. Under the law as thus settled, there could be no question as to the liability of appellee under the facts pleaded and found in the case before us.

It is contended by counsel for appellant that railway companies are liable in cases like this, just as they were formerly, notwithstanding the acts of 1885. On the other hand, it is contended by counsel for appellee that under those acts there is no liability on the part of railway companies in such cases. The first section of the act of April 8th, 1885, provides, that owners of land separated by the right of way of a railway company may, if such right of way has been acquired by condemnation or appropriation, enter upon the same and construct and maintain wagon and drive-ways over

and across such right of way, leading from one of such tracts to another on opposite sides of such railway, etc.

Section two provides, that where such railroad is fenced on one or both sides at the point where such way is constructed, such owner shall erect and maintain substantial gates in the line of such fence or fences across such way, and keep the same securely locked when not in use by himself or employees.

Section three provides, that if animals are killed or injured on the track of such railroad by the cars or locomotives thereof, the company owning or operating such railroad shall not be liable to pay damages therefor, if such animals entered upon the track of such railroad through such gates, unless it shall be proved that such killing or injury was caused by the negligence of the servants of the company owning or operating such railroad.

Of sections one, two, three and four of the act of April 13th, 1885, it is sufficient, in this connection, to say that, amongst other things, they provide generally for the fencing of railways; and the maintenance of such fences by railway companies, and, in certain cases, for such fencing and maintenance by adjoining land-owners at the expense of such railway companies, and for the saving of actions under former laws.

Section five, the last section of the act, is as follows: "All gates and bars at farm crossings, shall, in the absence of a contract or agreement to the contrary, be constructed and maintained and kept closed by the owner of such farm crossing."

In support of the contention for the liability of appellee in this case, appellant's counsel argues:

*First.* That sections two and three of the act of April 8th, 1885, relate wholly to gates at crossings constructed by adjoining land-owners under the power given by the first section of the act, and have no relation whatever to gates at crossings constructed before the act took effect, or voluntarily

constructed by the railway company for the convenience and use of such land-owners.

*Second.* That section five of the act of April 13th, 1885, has reference also to gates and crossings constructed by land-owners under the power given by the first section of the act of April 8th, 1885.

*Third.* That the first section of that act is unconstitutional.

*Fourth.* That said sections two, three and five are so connected with, and dependent upon, that section that they must fall with it.

*Fifth.* That section five of the act of April 13th is invalid, because not within the title of the act.

While the first two arguments, based upon a technical construction of certain words of the statute, are not without plausibility, they have not convinced us that the construction of the statute contended for is the correct one. On the contrary, our examination has led us to the conclusion that counsel's contention can not be maintained.

It is a settled principle, that in the construction of statutes the intention of the Legislature must govern. To ascertain that, the judiciary may look to the letter of the statute, to the statute as a whole, to the circumstances under which it was enacted, to the old law, if any, to the mischief intended to be remedied, and all like matters, and should endeavor, as far as practicable, to make such an application of the provisions of the statute as will best promote the object of its enactment. A construction which would lead to an absurdity, or possible injustice or contradiction, or unreasonable results, is always to be avoided if possible. *Middleton* v. *Greeson,* 106 Ind. 18, and cases there cited.

It is conceded in argument, that prior to the statutes of 1885 the land-owner could not obtain a private crossing over a railway, except with the consent of the railway company. Where such crossings were allowed they were by the grace of the company. And while it was held that, as between the railway company and the land-owner for whose benefit the

crossing and gates were allowed, the road would be regarded as securely fenced, it was also held, as we have seen, that as to other persons the company was bound at its peril to see that the gates were kept closed, and was liable to such persons for the injury or killing of their animals which passed to the track through such gates.

Liability could not be certainly avoided except by refusing crossings to all farmers. To allow such crossings for the convenience of adjoining land-owners, whose land was separated by the railroad, was regarded by the companies as so reasonable as not to be denied.

There was constant contention on the part of railway companies that, having granted such a reasonable privilege to such land-owners, they should not be held liable to any one for the injury or killing of animals getting upon the track through the gates at such crossings, left open through the neglect of such land-owners. The argument was that they should not be convicted and punished as for a wrong, when the privilege granted was so eminently reasonable. And so this court, as we have seen, for some time held.

The statutes of 1885 enacted into a right, on the part of the land-owner whose land is separated by rights of way of railway companies, in certain cases, what was before but a privilege voluntarily granted by such companies. Those statutes, also, impose upon such land-owners the duty of keeping the gates at such crossings closed, and thereby relieve the railway companies from all liability for the injury or killing of animals that may pass to the track through such gates.

Under the first section of the act of April 8th the right of the land-owner to force a crossing over the track is, by the terms of the section, limited to cases where the right of way was, or may be, acquired by condemnation or appropriation proceedings.

Was it the intention of the Legislature, in the enactment of the statutes of 1885, that, where crossings may be forced

over the track, railway companies shall be relieved from all liability on account of the gates being left open by the land-owner for whose benefit such crossing is constructed, and that they shall still be held liable, as formerly, in all cases where such crossings had been, or may be, constructed by license of, or voluntarily by, railway companies for the use and convenience of such land-owners?

To answer this question in the affirmative would be to so construe the statutes as to lead to an unreasonable result. The result of such a construction as stated, in substance, by counsel for appellee, would be this:

1st. Where crossings and gates have been, or may be, constructed under the power given by the first section of the act of April 8th, 1885, on a part of the right of way acquired by condemnation proceedings, the railway company is under no obligation, or duty, to keep the gates closed, and will not be liable to any one for the injury or killing of animals going upon the track at such gates, unless negligence is averred and proven.

2d. If the crossing and gates have been constructed since the act of April 8th, 1885, took effect, and on a part of the right of way acquired otherwise than by condemnation proceedings, the railway company is bound as to all persons, except the land-owner for whose convenience the crossing and gates have been constructed, and his tenants, to keep the gates closed, and will be liable, without proof of negligence, for the injury or killing of animals going upon the track through such gates.

3d. If the crossing and gates were constructed before the act of April 8th, 1885, took effect, as to all persons except the land-owner for whose benefit the crossing was constructed, and his tenants, the railway company is bound at its peril to keep the gates closed, and will be liable for the injury or killing of animals going upon the track through such gates, however the right of way may have been acquired.

Evidently, it was not the purpose of the Legislature, in

the enactment of the statutes, to fix such varying measures of liability on the part of railway companies in connection with farm crossings.

Whatever room there might be for argument upon the act of April 8th, standing alone, section five of the act of April 13th is broad and comprehensive in its terms, and covers all cases of farm crossings. To say that that section imposes upon the land-owner the duty of keeping such gates closed only as between himself and the railway company, and that it does not relieve the company from the duty of keeping them closed as to third parties, is to convict the Legislature of the folly of enacting what was the law already. The result of the legislation is, and doubtless the purpose of the Legislature in the enactment of the statutes was, to limit the liability of railway companies, as connected with farm crossings, as it was limited by the case of *Indianapolis, etc., R. R. Co.* v. *Adkins, supra,* and the cases following it.

This construction of the statutes establishes what we think was the purpose of the Legislature, a uniform rule of liability on the part of railway companies, as connected with farm crossings.

A contrary ruling could be of no practical and lasting advantage to those for whose convenience any of such crossings may have been constructed, nor to others. If, as conceded, the crossings and gates constructed prior to the acts of 1885, or across rights of way acquired by means other than condemnation, were, in the absence of contract, constructed and have been maintained, under a mere license from the railway company, or were constructed and have been maintained by the company as a matter of favor merely, doubtless, in most cases, the license may be revoked, the favor discontinued, and the crossing permanently closed by the company. Should that be done, the farmer would have no remedy but in the exercise of the power given by the first section of the act of April 8th, 1885; and the exercise of that power would bring the case clearly within the provisions of the acts

of 1885, as construed by counsel for appellant, and the railway company would not be liable to any one for the injury or killing of animals going upon the track through the gates thus constructed. And thus railway companies would have it in their power to ultimately bring almost every case within the terms of the acts of 1885, as interpreted by appellant's counsel.

If it be said that there may be some crossings which have existed for such a length of time, and under such circumstances, that the license on the part of the railway companies has ripened into an irrevocable right, so that they may be, and are, maintained against the wishes of the company, then such cases would be clearly within the spirit of the acts of 1885, as also interpreted by appellant's counsel.

If, as in effect contended, the exemption from liability on the part of railway companies under the acts of 1885, as connected with farm crossings, exists only where the company has no power to prevent such crossings, the above possible cases would clearly fall within the reason and spirit of the exemption.

It is argued, as before stated, that section five of the act of April 13th is invalid, because not embraced in the title of the act.

The title of the act is as follows: "An act requiring railroad corporations, and other persons operating and controlling railroads, to fence their right of way and railroad track, and to construct barriers and cattle-guards at certain public road and highway crossings, and to maintain and keep the same in repair, and prescribing remedies and penalties for failing to do so."

Without extending this opinion in the way of argument, we are satisfied that the fifth section of the act is so much a part of, and so connected with, the subject expressed in the title, as not to be open to the objection urged by counsel. See *Madison, etc., R. R. Co.* v. *Whiteneck,* 8 Ind. 217.

Our conclusion upon the whole case is, that under the acts

of 1885, neither in this, nor in similar cases, is the railway company liable, in the absence of negligence, for the injury or killing of animals going upon the track through gates at farm crossings, whether those crossings were constructed prior to those acts, or under the power given by the first section of the act of April 8th, 1885, or since the passage of those acts.    This conclusion renders it unnecessary for us to decide here whether or not the first section of the act of April 8th, 1885, is constitutional.    It may, however, be observed in passing, in the first place, that section five of the act of April 13th, 1885, which, of itself, is broad enough to exempt railway companies from liability in such cases, without reference to sections two and three of the act of April 8th, is not so connected with the first section of that act as to fall with it, if it should be held to be unconstitutional. And, in the second place, as it now seems to us, the question of the power of the land-owner to force a crossing over the track of a railway company is a question which concerns such land-owner and the railway company only.    If a landowner should exercise the power given by that section, and construct crossings and gates as therein provided, without question by the railway company as to the constitutionality of the section, we do not see, as at present advised, how the owners of animals injured or killed at such crossings could make the question.    But as we have concluded that, in the absence of negligence, railway companies .are not liable, under the other provisions of the acts of 1885, for the injury or killing of animals at farm crossings, even though the crossings may have been constructed with their consent, or by them, and independent of the power given by the first section of the act of April 8th, the question of the constitutionality of that section becomes immaterial, and hence we do not decide it.

As the rulings of the court below are in accord with this opinion, the judgment is affirmed; with costs.

Filed Oct. 11, 1887.