# WAYNE TOWNSHIP *v.* BROWN.

[No. 26,356.   Filed September 9, 1933.]

438

*Will W. Reller,* for appellant.

*Gardner Jessup, Tripp & Harrington* and *Rupe & Brown,* for appellee.

HUGHES, J.—This was an action by the appellee, as the assignee of a large number of accounts held by certain creditors of the appellant, which accounts were incurred by the appellant in administering the poor relief of the township.

The complaint was in five paragraphs. The appellant filed a demurrer to each paragraph of the complaint; the demurrer was overruled; the appellant refused to plead further and judgment was rendered in favor of appellee for the amount sued for.

The complaint sets out five different situations pertaining to the poor relief in so many paragraphs as follows:

First: Claims on warrants and/or vouchers issued by the township trustee, same evidencing indebtedness of the township, which have been allowed by the county

commissioners and an attempt made to sell bonds to secure money to pay the claims, and which bonds failed to sell.

Second: Claims on warrants and/or vouchers issued by the township trustee, same evidencing indebtedness of township, which have been approved by the county commissioners but no attempt made to sell bonds for the reason that the procedure was deemed useless and the expense of same avoided.

Third: Claims on warrants and/or vouchers issued by the township trustee, same evidencing indebtedness of the township which have not been approved by the county commissioners and for which no bond issues were authorized to meet payment of same.

Fourth: Claims against the township not evidenced by warrants and/or vouchers, the merchandise and products being sold to the Wayne township commissariat, same being operated for the relief of the poor under provisions of chapter 50 of the Acts of 1932.

Fifth: Claims against the township not evidenced by warrants and/or vouchers, the merchandise and products being sold to Wayne township commissariat for the operation of said commissariat, which is being operated as above stated.

There are four main issues raised by the appellant as follows:

First: That the statutes provide for a method of administering poor relief, and as such the county and township are jointly responsible, and that the indebtedness for poor relief is a joint obligation of the two units.

Second: That the method provided by statute for administering poor relief is exclusive and must be followed and is a condition precedent to establishing liability upon either the township or county.

Third: That if there not be sufficient funds in the general fund of the county for advancement to the town-

ship for payment of poor relief claims, the proper officers should levy taxes to pay said claims, and if not done they should be mandated; and that the obstacle to levy taxes should be corrected by the legislature, rather than the remedy sought by the appellee.

Fourth: That the Commissariat Act is unconstitutional.

In this state the poor relief is both a county and township system, as stated by appellee, each working in separate and different lines, depending upon the nature and kind of relief that must and is required to be extended.

Prior to May 15, 1901, poor relief was a county system and duty exclusively. Revised Statutes 1881, Section 6069.

Since May 15, 1901, it has been administered by the county as to certain activities and by the township as to others.

The county has the duty to maintain a county asylum and other charitable institutions permitted by law. It is the duty of the county to maintain in the county asylum persons lawfully settled in the county as may have been placed there by the overseers of the poor, and may contract with charitable institutions in the state for the relief and support of the poor placed there as a public charge. Section 12258, Burns R. S. 1926.

The statute provides that the overseer of the poor in each township shall have the oversight and care of all poor persons in his township so long as they remain a charge, and shall see that they are properly relieved and taken care of in the manner required by law. Section 12260, Burns 1926.

The overseer of the poor in each township is the township trustee. Section 12258, Burns 1926.

Section 12258, Burns 1926, provides: ". . . The county council shall appropriate and the board of commissioners in each county shall advance to the township trustee the money necessary for the relief and burial of the poor in each township, which shall be accounted for and repaid to the county treasurer as hereinafter provided."

Section 12291, Burns 1926, provides that: "When the township levies are made; the proper authorities of each township for the poor of which any such advancements have been made shall levy a tax upon the property of such township, to reimburse the county treasurer for payments made on such advancements, which taxes shall be collected as are other township taxes, and shall be paid into the county treasury. . . ."

Section 12266, Burns 1926, provides: "Whenever an overseer of the poor shall give aid, other than burial, medical relief, or assistance to children under the compulsory education law, to any poor person or family to the amount of fifteen dollars, it shall be unlawful for him to furnish any further aid to such poor person or family until he shall have presented a statement of the case to the board of county commissioners, with a schedule stating the following facts. . . ."

The Act of 1931, page 66, provides: "That any civil or school township in the state being indebted, or hereafter becoming indebted, and whose indebtedness is or shall be, evidenced by bonds, notes, judgment or other obligations heretofore, or hereafter, issued, or negotiated by such township, or rendered against such township, may for the purpose of funding or refunding such indebtedness, or any part thereof, reducing the rate of interest thereon, extending the time of payment and canceling so much thereof as may be due or shall hereafter become due, by the vote of two-thirds of the members of the township advisory board, and with the ap-

proval of the township trustee, issue its bonds, with interest coupons attached, for an amount not exceeding in the aggregate the whole amount of indebtedness of such township; .... The township advisory board and the township trustee of such township shall add, or cause to be added, in addition to any tax otherwise provided by law, to the tax duplicate of such township a levy sufficient to pay the yearly interest on such bonds and also not less than five cents on the hundred dollars tax valuation to provide a sinking fund for the liquidation of the principal when it shall become due; which sinking fund, together with the interest increase or profit thereon, shall be applied solely to the payment of such bonds."

An Act of 1931, page 188, provides: "That the boards of commissioners of any county of the state are hereby authorized to borrow money to pay claims incurred and filed with such respective boards of commissioners by trustees for relief of the poor of their respective townships, in excess of the amounts which can be reasonably advanced out of the general fund of the county for such purpose under the provisions of existing laws. . . . The township trustee and the advisory board of the township . . . shall at the next meeting . . . after the making of said loan, levy a tax sufficient to reimburse the county for the loan, principal and interest. . . ."

An Act of 1933, being chapter 203, p. 981, provides: "That the board of commissioners of any county of this state are hereby authorized to estimate the amount of money which will be required for any period not exceeding six months in advance for the relief of the poor of the various townships of such county in excess of the amounts which can be reasonably advanced out of the general fund of the county for such purpose, under the provisions of existing laws. After estimating the

amount of money which will be required for such period, the board of commissioners of any county of the state is hereby authorized to borrow money not in excess of the reasonable amount necessary for such purposes covering such period, and shall be authorized by ordinance of the county council, duly called into session, in the manner now provided by law, to issue the bonds of the county extending over a period not to exceed ten years, as other county bonds are issued, which bonds shall bear interest at the rate of not to exceed six per cent per annum payable semi-annually. . . . Such bonds shall be executed by the board of commissioners of the county issuing the same, . . . and such bonds shall constitute a county obligation. The boards of commissioners of the various counties of the state are hereby authorized to borrow such amount of money on temporary loans as may be necessary to meet poor relief payments for the respective townships for a period of not to exceed two months in advance . . . which loans shall be evidenced by the notes of such counties executed by the board of county commissioners, and attested by the auditor of such county, and shall constitute a county obligation."

An Act of August 16, 1932, p. 186, amended the Act of 1931, p. 188, in some particulars as to the selling of the bonds.

An Act was passed by the special session of 1932, p. 17, being chapter 10, known as the dollar and half tax law. Section 1, of said act provides: "That the total of all taxes whether fixed by the state board of tax commissioners or by statute from which any revenue shall accrue or be paid to the state treasury for any purpose or for the use of any fund kept or received by the treasurer of state, for the year 1932, upon which taxes are payable in the year 1933 and for each year thereafter shall not exceed the sum of fifteen cents upon each

one hundred dollars of taxable property within said state."

Section 2 of said act provided: "The term municipal corporation, as used herein, shall include counties, townships, school townships, . . . school districts, sanitary districts, park districts and all taxing units within the state."

Section 3 of said act provided: "That the total of all tax levies on property within any municipal corporation for all municipal corporations for which the property therein is taxable shall not exceed the total rate of one dollar and fifty cents on each one hundred dollars of taxable property therein, except as hereinafter provided."

Section 4 of said act provided for a County Board of Tax Adjustment, organization, powers and duties and had an emergency clause relative to the $1.50 rate.

Section 3 of the Act of 1932 was amended by the Acts of 1933, chapter 97, p. 673, to read as follows: "The total of all tax levies on property within any municipal corporation for all municipal corporations for which the property therein is taxable, except as provided in section 4 of this act, shall not exceed the following total rates:

"In territory outside of the corporate limits of incorporated cities and towns, the total tax rate for all purposes, including the state levy referred to in section 1 of this act, shall not exceed one dollar on each one hundred dollars of taxable property therein.

"In territory inside of the corporate limits of incorporated cities and towns, the total tax rate for all purposes, including the state levy referred to in section 1 of this act, shall not exceed one dollar and fifty cents on each one hundred dollars of taxable property therein."

Section 4 of the Act of 1932 was amended by the Acts of 1933, p. 674, as to the qualifications of the members

of the tax adjustment board, and in some other particulars but especially as to declaring an emergency as provided in clause five of said section, and being on page 676 of said act. It provides for the board of tax adjustment to meet at the office of the county auditor on the third Monday of September of each year and from day to day thereafter as their business requires. "At the first meeting the county auditor shall lay before said board the budgets adopted and tax levies fixed by the proper officers or bodies of each municipal corporation of such county for the ensuing year, and such board shall have the right to require the attendance, or the furnishing of such information pertaining to said budgets and levies, by the officials of the various municipal corporations in the county as said board may deem necessary. . . . It shall be the duty of such board to examine and, if it deems such action necessary, revise, change or reduce, but not increase, any tax levy and any corresponding items of the budget on which such tax levies are based and apportion the total of all said levies so that the total levy on property within any municipal corporation for all municipal corporations for which the property therein is taxable, including the state levy referred to in section 1, shall not exceed the applicable total rate as provided in section 3 hereof: *Provided, however,* That if an emergency exists as to any municipal corporation, such board, by a vote of at least five members thereof, shall have the power to fix such tax levy for such municipal corporation as is necessary to meet such emergency though the total rate fixed as the result thereof shall exceed the applicable total rate as provided in section 3 of this act: *Provided, further,* If an emergency exists and shall be so declared by the county board of tax adjustment, such board shall set out of record their reasons for declaring such emer-

gency, and shall state of record the nature of the emergency for which any such increased levy is made."

Clause 6 of section 4, as amended by the Acts of 1933, p. 677, provides that: "The county board of tax adjustment shall have no authority under this act to reduce specific tax levies made by the local officers for the purpose of providing funds for the payment of obligations of the several municipal corporations incurred prior to August 8, 1932, or funding or refunding obligations of such municipal corporations heretofore or hereafter authorized or issued for the purpose of procuring funds to pay obligations incurred prior to August 8, 1932, or any judgment against such municipal corporation or obligations issued to refund the same, below the amount required to meet such obligations and the interest thereon at the times and in the amounts required by the terms of such obligations. It shall be the duty of the proper governmental bodies and officers charged with the levying of taxes to levy taxes in an amount necessary, after applying all funds then available from other sources, to pay the principal and interest of such obligations as the same become due."

It is seen from the foregoing sections of the statute and the acts of the Legislature, that it is the duty of the county to take care of and provide for the poor in the county asylum and other charitable institutions in which the poor and indigent are placed, and the duty and obligation is upon the township trustee to take care of the poor within the township. It is also clearly shown that it is the duty of the county council to appropriate, and the board of commissioners of each county to advance to the township trustee the money necessary for the relief, and burial of the poor in each township, which money shall be accounted for and repaid to the county treasury.

While it is the duty of the county to advance money

to the township, it is a township liability to take care of its poor and not the obligation of the county. ■ The money advanced by the county becomes a loan to the township and the township, under the provisions of the law, must reimburse the county for all advancements or loans made.

Section 5894, Burns 1926, provides: "Hereafter the board of county commissioners, or any authority, shall have no power whatever to make any allowance for voluntary service, or for things voluntarily furnished, and no power to pay, or cause the same to be paid for, out of the county treasury; *they shall have no power to allow, pay or cause to be paid any money out of the county treasury* to or for the *relief* or *support* of *any pauper* or *poor person* whatever, or liable to become such, if such person be at the time not an inmate of some county institution. They shall have no power to contract for services of any physician to attend upon any poor of the county other than inmates of the county institution; . . ." (Our italics.)

It is clearly seen from the above section of the statute that the Legislature has expressly provided that it is not a county duty or obligation to take care of the poor other than those in a county institution; and, it not being a duty or obligation of the county, it necessarily, without question, becomes a duty and obligation of the township alone to take care of its poor.

An Act of 1859, p. 220, Sec. 12043, Burns 1926, provides: "Each and every township that now is or may hereafter be organized in any county in this state is hereby declared a body politic and corporate, by the name and style of '........................ township of ...............county', according to the name of the township and county in which the same may be organized, and, by such name, may contract and be contracted with, sue

and be sued in any court having competent jurisdiction."

It is the duty of the township to take care of its poor. The township has the power through its proper officer to make contracts for the relief of the poor, and having entered into a valid and legal contract for this purpose the obligation becomes binding upon the township and must be paid by the township. And if the township, by its proper officers, refuses to comply with a valid and legal contract it may be sued and judgment rendered against it. In the instant case the obligation entered into between the township and persons who furnished food, products and other things for the relief of its poor was a valid and legal obligation and those who furnished the goods are entitled to be paid for the same. If not paid, they are entitled to sue and recover a judgment against the township for the amount due them.

It is insisted by the appellant that the matter of township poor relief is a duty imposed jointly on the county and the township and that the township can not be sued alone for debts created in giving relief to the poor and that the county also is liable. This contention can not prevail for the reasons heretofore given. The relief of the poor is an obligation of the township and not that of the county.

It is also insisted that the statutes provide a method of granting relief and the allowance of claims and that such statutory method is a condition precedent to making the township and county liable. It is insisted that under the statutes it is necessary that the claims be filed in the county auditor's office and passed upon and allowed by the board of county commissioners. It must be conceded that for the past several years this has been the practice generally pursued. However, after a very careful examination of all the

statutes we find none which prescribes this procedure. On the other hand we find the township trustee of each township is the overseer of the poor and that it is his duty to look and provide for their relief. And that the county council shall appropriate and the board of commissioners of each county shall advance to the township trustee the money necessary for the relief of the poor in each township. Throughout all the statutes there is the provision for the county to advance the money necessary, but in no statute is it provided that it is necessary for the holders of township orders to present them to the board of county commissioners for them to pass upon and allow. Under the statutes and acts as we find them it is the duty of the county council to appropriate and the board of commissioners to advance to the township trustee the money necessary for the relief of the poor in his township. It is not the duty of the board of commissioners to pass upon and allow each claim held by those who have given help to the poor on a proper order of the trustee, nor the duty of the county auditor to draw his warrants therefor. It is the duty, however, for the board of commissioners to advance the necessary money to the trustee for the relief of the poor of the township upon a proper showing made by him, and it is then up to him to make the payments to the proper persons. As stated above we concede that this has not been the method pursued for many years. It may not be the best method and, if not, then it is up to the Legislature to prescribe a procedure. It is not for this court to enter the fields of legislation. We are only concerned with the law as we find it.

It may be suggested that section 12266, Burns 1926, points to a different construction than we have given the different acts. That section provides: "Whenever an overseer of the poor shall have given aid, other than burial, medical relief or assistance to

children under the compulsory education law, to any poor person or family to the amount of fifteen dollars, it shall be unlawful for him to furnish any further aid to such poor person or family until he shall have presented a statement of the case to the board of county commissioners, with a schedule stating the following facts, viz: . . ." And section 12267, Burns 1926, provides: "On the inspection of said schedule the county commissioners may authorize the overseer to extend further aid to such person or persons. . . ." There is nothing inconsistent with this provision of the statute and the construction we have placed upon the other statutes and acts. Under section 12266, *supra*, it becomes the duty of the trustee at his peril not to furnish more than fifteen dollars to any one person or family before the case is presented to the board of commissioners for its approval. This duty is upon the trustee and not upon the one who furnishes the aid in whatever form it might be. If the trustee violates this section and pays out more than allowed without presenting the same to the board of commissioners, then the liability for the excess is upon him, and not upon one who in good faith and without knowledge, furnishes more than fifteen dollars on a proper order of the trustee.

If there is not sufficient money in the general fund of the county to advance the necessary amount of money to the township, then in that event the board of commissioners is authorized, and it becomes its duty, to borrow money to pay poor relief claims incurred and filed with such respective boards of commissioners. And the board of commissioners is authorized by ordinance of the county council, duly called into session, in the manner now provided by law, to issue the bonds of the county extending over a period of not to exceed ten years, as other bonds are issued, and such bonds shall constitute a county obligation. And under

the law, if necessary, it becomes the imperative duty of the county council to authorize the issuance of the bonds and the board of commissioners to issue them in order to raise money for the relief of the poor of the township.

The tax law of 1932, and as amended in 1933, commonly known as the dollar and half tax law, limits the rate to one dollar in territory outside of the corporate limits of incorporated cities and towns and in territory inside of the corporate limits of incorporated cities and towns to one dollar and fifty cents. However, in case of an emergency existing in any municipal corporation, the board of tax adjustment, by a vote of at least five members thereof, shall have the power to fix such tax levy for such municipal corporation as is necessary to meet such emergency, though the total rate fixed as the result thereof shall exceed the total rate of one dollar, or one dollar and a half as the situation of the taxable property may be. And in case of an emergency in any municipal corporation, such as for the relief of the poor, the board of tax adjustment not only has the power, but it becomes its imperative duty to fix such tax levy for such municipal corporation as is necessary to meet such emergency. This duty can not be side-stepped or evaded on the theory that it would raise the tax levy above the one dollar or one dollar and half rate. The legislative body purposely made the exception to take care of emergencies that might exist in any municipal corporation.

The question may be hereafter raised that the Act of 1933, chapter 203, page 981, is invalid as not being in compliance with the constitutional provision that where a section of an act is amended it shall be set forth at full length therein. As all the acts we are considering are more or less related and interlocking with one another, we consider that we should pass upon the validity of the above act.

The title of chapter 203 proceeds upon the theory of an amendatory act. The language is: "An Act to amend section 1 and the title of an act entitled 'An act authorizing the borrowing of money by boards of commissioners . . ., approved March 6, 1931, approved August 16, 1932. . . .'"

Section 21 of article 4 of the Constitution of Indiana, provides: "No act shall ever be revised or amended by mere reference to its title; but the act revised or section amended shall be set forth and published at full length."

Section 19 of article 4, provides: "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

Under the above sections the act can not be held to be an amendment. However, when we read section 19, article 4, we find that the "subject of the legislation must be expressed in the title," and "if any subject shall be embraced in an act which shall not be expressed in this title, such act shall be void only as to so much thereof as shall not be expressed in the title."

In the case of *Milligan* v. *Arnold* (1912), 50 Ind. App. 559, 98 N. E. 822, the court said: "In this state a constitutional provision (Const. Art. 4, Sec. 19) requires the subject matter of a legislative enactment to be expressed in the title, and a failure in this respect will invalidate the part not expressed. . . . But we know of no rule of law or case, holding a legislative enactment invalid on the ground that its title is broader than the subject of the legislation."

If the title covers a general subject, matters germane to such subject may be included in the act although not specifically mentioned in the title. *People* v. *Monroe*

(1932), 349 Ill. 270, 182 N. E. 439, 85 A. L. R. 605. *Marion, etc., Traction Co.* v. *Simmons* (1913), 180 Ind. 289, 102 N. E. 132. In the above case the question was concerning the towns and cities Act of 1905, and the title was, "An Act concerning municipal corporations," and was held not violative of the constitution.

In construing the title, "An Act concerning highways" (Acts 1905, p. 521), which is general, against an attack that the title could not include streets of a town or city, this court held that the title to an act need not specify each particular or detail within the scope of the act; but that such title is sufficient if all details of the act might be reasonably inferred. *Smith* v. *Board* (1910), 173 Ind. 364, 90 N. E. 881.

"It is no objection that a title to an act is too broad, general, or that it comprehends more than is legislated upon by the act itself." *Lindsay* v. *State* (1924), 195 Ind. 333, 145 N. E. 438.

If we consider the act alone, it does not purport to be an amendment, but an original act. The subject of the act is the borrowing of money by boards of commissioners in anticipation of claims to be incurred and filed by trustee for relief of the poor.

So much of the title as relative here is as follows: "An Act . . . providing for the borrowing of money . . . boards of commissioners in anticipation of claims to be incurred and filed by trustees of townships for relief of the poor, and declaring an emergency."

The act embraces but one subject and we think it is expressed in the title of the act and that part of the title purporting to amend chapter 46 of the Acts of 1932 should be regarded as surplusage, and the act should be sustained as original legislation.

"Statutes are to be construed as to sustain their constitutionality rather than to place upon them a con-

struction which would render them invalid." *Cox* v. *Timm* (1914), 182 Ind. 7, 15, 150 N. E. 479.

Having held that chapter 203, Acts 1933, p. 981, is valid, the question is then presented—Is the act ▮ in conflict with chapter 237, Acts 1933, p. 1085? These two acts became effective at the same time.

Section 3, of chapter 237, provides for a limitation of the tax rule to one dollar in territory outside of the corporate limits and incorporated cities and towns and one dollar and fifty cents in territory inside of the corporate limits of incorporated cities and towns.

Section 4 of said act, provides: "That if an emergency exists as to any municipal corporation, such board, by a vote of at least five members thereof, shall have the power to fix such tax levy for such municipal corporation as is necessary to meet such emergency though the total rate fixed as the result thereof shall exceed the applicable total rate as provided in section 3 of this act."

Section 4 of chapter 237 also provides: "The county board of tax adjustment shall have no authority under this act to reduce specific tax levies made by the local officers for the purpose of providing funds for the payment of obligations of the several municipal corporations incurred prior to August 8, 1932, or funding or refunding obligations of such municipal corporations heretofore or hereafter authorized or issued for the purpose of procuring funds to pay obligations incurred prior to August 8, 1932, or any judgment against such municipal corporation or obligations issued to refund the same, below the amount required to meet such obligations and the interest thereon at the times and in the amounts required by the terms of such obligations. It shall be the duty of the proper governmental bodies and officers charged with the levying of taxes to levy taxes

in the amount necessary, after applying all funds then available from other sources, to pay the principal and interest of such obligations as the same become due."

In construing the emergency clause of Section 4, *supra,* and the clause just set out above, must we not construe them to take care of any obligations for the relief of poor? If, as provided, an emergency exists for the relief of the poor (and there may be other emergencies) then it becomes the imperative duty for the adjustment board to fix such a tax levy as will take care of the emergency notwithstanding the rate may go above the limitation as fixed in section 3, and there is nothing in the clause last above set out to prevent this. In the latter clause it specifically says that: "The board shall have no authority to reduce specific tax levies made for the purpose of providing funds for the paying of obligations of the several municipal corporations incurred prior to August 8, 1932, of funding or refunding obligations heretofore or hereafter authorized or issued for the purpose of procuring funds to pay obligations incurred prior to August 8, 1932, or any judgment against such municipal corporation." It is to be noted that the provision for the payment of any judgment includes judgments that may be taken after August 8, 1932, as well as those taken before. If a judgment taken after August 8, 1932, upon a claim for poor relief, is an obligation to be considered and paid, then does it not logically follow that a claim for poor relief, not reduced to judgment, but incurred after August 8, 1932, is an obligation to be taken care of by funds provided to pay the same? In our opinion it does. And it becomes the duty of the proper governmental bodies and officers charged with the levying of taxes, to levy taxes in an amount necessary, after applying all funds then available from other sources, to pay the principal and interest of such obligations as the same become due.

We do not believe that chapter 203 and chapter 237 of the Acts of 1933 are in conflict with each other when we consider the well known rules of statutory construction. They should be so construed, if possible to avoid conflict. And statutes bearing on the same subject should be construed together.

Statutes enacted at the same session of the legislature are to be construed in *pari materia*, so as to give effect to each if possible. *State* v. *Rackley* (1829), 2 Blackford 249; *Indiana Cent. Canal Co.* v. *State* (1876), 53 Ind. 575; *Shea* v. *City of Muncie* (1897), 149 Ind. 14, 46 N. E. 138.

In the construction of statutes where the meaning is doubtful and uncertain, the courts may look to the situation and circumstances under which the same were enacted; other statutes bearing upon the same subject, whether passed before or after, and whether in force or not, as well as the history and general condition of the country. *Stout* v. *Board of Com'rs.* (1886), 107 Ind. 343, 8 N. E. 222; *May* v. *Hoover* (1887), 112 Ind. 455, 14 N. E. 472; *Hunt* v. *Railway Co.* (1887), 112 Ind. 69, 13 N. E. 263; *Parvin* v. *Wimberg* (1892), 130 Ind. 561, 30 N. E. 790, 15 L. R. A. 775, 30 Am. St. Rep. 254; *State* v. *Myers* (1896), 146 Ind. 36, 44 N. E. 801; *Given* v. *State* (1903), 160 Ind. 552, 66 N. E. 750.

We judicially know the situation and circumstances and the general condition of the state when these acts were passed. We know that the question of poor relief then, as well as now, was uppermost in the minds of all, and that the legislative body was intent on passing laws to take care of this situation. And, knowing this, these acts should be so construed, if possible, as harmonious and not in conflict so that the evident purpose of the legislature may be fulfilled.

It is insisted that the Township Commissariat Act of

1932, page 191, and as amended by the Acts of 1933, page 1007, is unconstitutional. Section 1 of said ██ act provides: "That except as hereinafter otherwise provided, with the approval of the board of county commissioners, the advisory board of any township located in any county in which county there is located any city of the second class, or located in any county having a population not less than 53,500 nor more than 58,000 according to the last preceding United States census, or any township in which there is located a city of the third class, not being a county seat, and having a population of more than thirty thousand, according to the last preceding United States census, may establish and operate a township commissariat in the manner prescribed in this act."

Section 2 provides that the township commissiariat shall be under the control and direction of the township advisory board, and that the said board may employ assistants to help operate said commissariat and establish branches in the township.

Section 3 was amended by the Acts of 1933, page 1007. Said section makes provisions as to the purchasing of supplies and making contracts and giving notice thereof.

Section 4 provides for the issuing of requisitions to the persons asking for relief.

Section 5 provides that: "All supplies or commodities purchased or contracted for, as herein provided, shall be paid, in the first instance, by the board of commissioners of the county, on order of the advisory board, out of the funds hereinafter provided for that purpose, and the amount so paid on behalf of any such township in such county shall be repaid to such county as herein provided."

Section 6 provides that: "For the purpose of procuring the necessary funds with which to operate and main-

tain such commissariat and to procure, purchase and distribute the supplies and commodities herein contemplated, the board of commissioners of the county in which such township is situated may advance a sufficient amount of money, from time to time, out of the general fund of the county; or, if no money is available in such fund, the board of commissioners is hereby authorized to borrow a sufficient amount of money for the purpose herein contemplated. Such loans shall not be in excess of the reasonable amount necessary for such purpose, and shall be authorized by ordinance of the county council, duly called into session, in the manner provided by law. Any loan so made may be made for a period of not less than one nor more than ten years, shall be evidenced by the notes, warrants or bonds of such county, executed by the board of commissioners. . . . Such notes, warrants or bonds shall be sold by the auditor of such county in the same manner as is provided by law for the sale of the bonds of counties."

Section 7 was amended by the Acts of 1933, page 1008, and provides: "That the township trustee and the advisory board of such township in any such county shall, at the next and successive annual meetings of such advisory board after the making of any such loan, levy a tax sufficient to reimburse the county for so much of said loan, principal and interest, as then may become due and payable by the county according to the terms, tenor, and provisions of issuance of bonds referred to in section 6 of this act; and in the event that said officers fail to levy sufficient tax so to pay such maturing bonds and interest as herein provided, then and in such event the auditor of the county in which is such township shall levy the same or increase such tax in such amount as will reimburse the county for the amounts as herein provided."

It is the contention of appellant that the Commis-

sariat Act is unconstitutional being in violation of section 22 of article 4 of the Indiana Constitution forbidding local and special laws regulating county and township business, and likewise in violation of section 23 of article 4 of the Constitution requiring that all laws shall be general and of uniform operations throughout the state.

Section 22 of article 4 of the Constitution of Indiana provides: "The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . Regulating county and township business."

Section 23 of article 4 of the Constitution of Indiana provides as follows: "In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state."

Can it be said that the Commissariat Act violates section 22 and 23 of article 4 of the Constitution of Indiana? We do not believe so.

The act in question provides that the advisory board of any township in any county in which county there is located any city of the second class, or in any county having a population not less than 53,500 nor more than 58,000 according to the last preceding United States census, or any township in which there is located a city of the third class, not being a county seat and having a population of more than 30,000 according to the last census, may establish and operate a township commissariat for the care and relief of the poor of the township.

In the case of *Kraus* v. *Lehman* (1908), 170 Ind. 408, 415, 83 N. E. 714, 84 N. E. 769, 15 Ann. Cas. 849, the court said: "That all reasonable presumptions must be indulged in favor of the validity of an act of the Legislature, and it is only when its invalidity appears so

clearly and palpable as to leave no room for a reasonable doubt that it violates some provision of the Constitution that a court will refuse to affirm or sustain its validity." In the above case the court also said: "Art. 4, Sec. 23 emphasizes what the provisions of section 22 were intended to bring about in respect to laws enacted by the Legislature upon cases or subjects therein enumerated, for said section 23 declares that 'in all the cases enumerated in the preceding section, *and in all other cases where a general law can be made applicable,* all laws shall be general, and of uniform operation throughout the state.' " (Our italics.)

In the case of *Smith* v. *Board* (1910), 173 Ind. 364, 90 N. E. 881, we find the question of the constitutionality of an act relative to the improvement and building of a highway, questioned as being in violation of section 22 of article 4. The act provided that: "Whenever a petition signed by fifty or more freeholders and voters of any township in any county in this state, includes any incorporated town or city in such township having a population of less than thirty thousand inhabitants, praying . . . the board of county commissioners shall proceed under such petition and carry out the provisions of the act." The court in this case held that such a law did not violate section 22 of article 4, and that: "A law that applies in the same way to all parts of the state, where conditions upon which it operates are similar, is a general, and not a local or special law. . . .

"The exclusion from its operation of all incorporated towns and cities of thirty thousand and over, and the inclusion of all such towns and cities of less than thirty thousand, is not a capricious, unreasonable, and unconstitutional classification." It is further held that population is a reasonable basis for classification and is not confined to highway purposes. In 1871 (Acts 1871, p.

20) a common school system was provided for cities of over thirty thousand inhabitants. In 1899 (Acts 1899, p. 432) boards of school commissioners in cities of over thirty thousand inhabitants were authorized to levy a library tax, and in 1899 (Acts 1899, p. 125) mayors of cities of thirty thousand, or more, inhabitants were empowered to veto ordinances.

In the case of *Bumb* v. *City of Evansville* (1907), 168 Ind. 272, 80 N. E. 625, the act in question related to cities having a population of more than 50,000 and less than 100,000. The appellant contended the same violated section 22 of article 4 of the Constitution. The court, in quoting from other cases, said: "Any law which applies generally to a particular class of cases is not a local or special law. . . . The Constitution does not require that the operation of a law shall be uniform, other than its operation shall be the same in all parts of the state under the same circumstances."

The Commissariat Act does not violate section 22, article 4 since it is not a local or special law regulating county and township business. It provides the means for townships to handle the poor relief situation in the townships in the most economical manner, and was passed in order to meet the poor relief emergency. It applies to all townships in any county in which county there is located any city of the second class, or in any county having a population not less than 53,500 nor more than 58,000, or any county in which there is located a city of the third class, not being a county seat and having a population of more than 30,000.

It has been held that in enacting a law upon any subject enumerated in section 22, the Legislature may resort to classification and thereby make a general law within the meaning or contemplations of that section. *Kraus* v. *Lehman, supra.*

There must, however, be a real reason or necessity

for the classification and must inhere in the subject matter and must be natural and not artificial. *Kraus* v. *Lehman, supra.*

Many different situations arise in administering the poor relief law in different parts of the state. There are many small townships in different parts of the state where the population is small and composed mostly of farmers and where they are not effected by the poor relief situation. On the other hand there are other communities with a different situation where it would be most economical in relieving the poor by a township commissariat. And other communities where it would be impracticable to dispense the poor relief through a commissariat.

As said in the case of *School City of Rushville* v. *Hayes* (1904), 162 Ind. 193, 70 N. E. 134: "The political needs of the larger community may be of a different nature, and the forms and methods by which its affairs must be administered may be more extensive, complicated, and elaborate than those required in a municipality of a smaller population." And in the case of *Strange* v. *Board* (1910), 173 Ind. 640, 91 N. E. 242, the court said: "If there is a reason for the classification, then, in the very nature of the case, the existence of the power implies the right to fix it at some place, or at some number, or at some population, and the right to fix the classification rests with the legislative body."

It is our opinion that the Township Commissariat Act is valid and does not violate either section 22 or section 23 of article 4 of the Constitution of Indiana.

The demurrer to each paragraph of the complaint was properly overruled.

Judgment affirmed.