The LAKE COUNTY COUNCIL, Lake County, Indiana, Appellant (Plaintiff Below)

v.

Dozier ALLEN, as Calumet Township Trustee, of Lake County, Indiana; and Edison Thuma, Kenneth Kobe, William Long, Donald Blinzenger, and James Gutting, as the Calumet Township Trustee Management Committee, Appellees (Defendants Below),

and

Earline Hunt; Lula Hayden; Northern Indiana Public Service Company; Gary–Hobart Water Corporation, Appellees (Intervening Defendants Below).

No. 45S03–8802–CV–237.

Supreme Court of Indiana.

June 6, 1988.

Gerald M. Bishop, Greco, Pera & Bishop, Merrillville, Ray L. Szarmach, Kowalski, Szarmach & Fernandez, East Chicago, for appellant.

Frederick F. Eichhorn, Jr., Charles W. Webster, James K. Morse, Eichhorn, Eichhorn & Link, Hammond, Linley E. Pearson, Atty. Gen., James R. Green and Terry G. Duga, Deputy Attys. Gen., Indianapolis, for appellees.

PIVARNIK, Justice.

This cause was originally docketed in the Court of Appeals. On February 17, 1988, this court granted appellees petition for an emergency transfer pursuant to Appellate Rule 4(A)(10) finding the case demands a swift determination by this court of a substantial question of law of great public importance.

The issue presented for review is the finding by the trial court that poor relief is ultimately the responsibility of the county and thus is governed by its constitutional debt limit rather than that of the township. Plaintiff–Appellant Lake County Council is appealing a summary judgment in favor of Defendant–Appellee Northern Indiana Public Service Company, a gas and electric utility furnishing services to poor recipients. The judgment in effect denies the Council all of its requested relief and enters a declaratory judgment in favor of all the defendants-appellees: NIPSCO; Calumet Township Trustee Dozier Allen; Edison Thuma, Kenneth Kobe, William Long, Donald Blinzenger, and James Gutting, the Calumet Township Trustee Management Committee; Earline Hunt and Lula Hayden, Poor Relief Recipients; and the Gary–Hobart Water Corporation.

The Poor Relief Program of Calumet Township, Lake County, Indiana, has had considerable problems in recent years that have resulted in poor people's suits in federal court and suits by unpaid vendors. As the poor relief program in the township neared total collapse the legislature enacted the Distressed Township Act of 1986. Ind. Code 12–2–14–1 through –48 (Acts 1986, Public Law 107). It is a comprehensive act under which failing poor relief programs are taken over by the state, continuous poor relief is guaranteed, and the program is placed on a sound economic

footing. The plan provides for the governor to appoint a management committee who assumes the trustee's duties, audits the program, rearranges its finances, continues poor relief without interruption, and creates a procedure to resolve the vendor's outstanding claims. IC 12–2–14–8 through –23. The Act requires the county to adopt a fiscal plan that insures current poor relief, pays outstanding valid claims of vendors, and retires poor relief bond debt. If the county fails to adopt such a plan, the state tax board is required to reduce the county's general fund and increase the distressed township's poor relief account in an amount to satisfy these requirements. IC 12–2–14–31(a); IC 12–2–14–28(a)(2). If the county chooses to adopt a fiscal plan rather than suffer the automatic diversion from its budget, it may adopt a county adjusted gross income tax or a county option income tax in order to meet the revenue realities of the plan, IC 12–2–14–29, so long as the taxes come from sources other than property taxes imposed within the distressed township. IC 12–2–14–27(b).

The Lake County Council claims that all debt incurred by the township in excess of two percent of its assessed valuation was in violation of Art. 13, § 1 of the Constitution of the State of Indiana and the obligation of such debts was therefore void and the statutes requiring the county to pay them were unconstitutional. The County Council further takes the position that it is unfair to burden them with the payment of obligations for which they have no control. These are legitimate concerns. However, the trial court found that the legislature recognized these problems and designed a scheme to properly respond to them.

The Calumet Township Trustee and Appellant Lake County Council declared the township distressed on March 25, 1986, approximately two weeks after passage of the bill, thus triggering the procedures contemplated by the Act. The governor very soon appointed a management committee which set about its task immediately. The State immediately advanced the county seven million dollars for poor relief in the township. Then the county auditor stopped paying for the township's poor relief from the township's dedicated fund, and used the seven million dollar fund instead. He then applied the dedicated fund to repay loans from the accounts for roadway bridges. The county refused to institute any plan claiming that poor relief was the obligation of the township and not the county. Two months later the county brought this action for declaratory and injunctive relief claiming that as applied to the particular facts of Calumet Township, the Distressed Township Act and the Poor Relief Acts are unconstitutional because the township, not the county, had exceeded the two percent debt limit of Indiana Constitution Art. 13.

All parties agree that the cumulative voucher debt for poor relief in Calumet Township had reached approximately 24 million dollars and that this was in excess of the two percent debt limit of Calumet Township. The trial court found that although poor relief is initially administered by the township trustee and funded by the dedicated funds of the township through the county auditor, that the legislative scheme is that the county is ultimately responsible for providing for the poor relief of the county and therefore obligations for payment do not become void until the two percent limit of the county is exceeded. The court further reasoned that one of the circumstances, and perhaps the paramount one, that would result in a township being "distressed" would be reaching the point where the township no longer has funds to provide for poor relief and has reached or exceeded its two percent limit. We find the trial court properly resolved these issues and affirm its judgment.

Appellant County Council relies heavily on the opinion of this court in *Wayne Township v. Brown* (1933), 205 Ind. 437, 448, 186 N.E. 841, 845 in its contention that poor relief debt is that of the township alone. In a cause similar to this one this court did conclude in *Wayne Township* that the obligation for poor relief was that of the township alone and not that of the county based on legislative enactments in effect at that time. In 1933 this country

was in the throes of the great depression and many townships became "distressed" at meeting poor relief needs. The statutory scheme in effect at that time provided that the county advance funds to the township when needed for poor relief, which monies the township had to repay to the county. Section 12258 and Section 12291 (Burns 1926). This legislative scheme made the township the party ultimately responsible for poor relief by limiting the source of its funding to a tax upon the property of the township. At the next biennial session of the legislature following *Wayne Township*, in 1935, the poor relief statutes were completely rewritten: Indiana Acts 1935, chapters 116 and 117. The trial court reasonably interpreted the legislative intention to be that the ultimate responsibility for poor relief would be on the shoulders of the county. The 1935 Acts are still substantially in effect today. A provision of such Act, designated as Indiana Acts 1935, ch. 116, § 30, at 444, now found at Ind. Code 12-2-1-31 (Burns 1981), provided:

If no funds are available for such purpose (to pay poor relief claims), the county commissioners shall at once borrow or otherwise provide such funds, and the county council shall promptly pass necessary ordinances and make necessary appropriations to enable this to be done, whether to borrow money as a temporary loan against taxes levied and in the process of collection, or by the sale of county poor relief bonds or other county obligations, or by any other lawful method of obtaining funds for such purpose.

Indiana Acts 1935, ch. 117, § 6, at 451, now found at Ind.Code 12-2-5-6 (Burns 1981), further provided:

Sec. 6. All bonds issued pursuant to the provisions of this act shall be the direct general obligations of the county issuing the same, payable out of unlimited ad valorem taxes to be levied and collected on all of the taxable property within the county, and it shall be the duty of all officials and bodies having to do with the levying of taxes for the county to see that sufficient levies are made to meet the principal and interest on said bonds at the time fixed for the payment of the

same, without regard for the provisions of any other act. In case of the failure or refusal of any of such tax levying officials and bodies to make or allow a sufficient levy, then said bonds and the interest thereon shall be payable out of the general fund of the county without any appropriation being made therefor: *Provided, however,* That the county may omit such tax levy to the extent that the county will have available in the following years funds received by way of reimbursement from the townships to which advancements are made from the proceeds of said bonds, as hereinafter provided.

In its revision of the state's poor relief laws the Indiana Legislature in 1935 stated:

The purpose of this chapter is to provide necessary and prompt relief to the citizens and residents of this state and this chapter shall be liberally construed in order that its purpose may be accomplished as equitably and expeditiously as possible.

The trial court found that by giving effect to all of the language of the poor relief statutes in question prior to the passage of the Distressed Township Act (HEA # 1185), clearly the Lake County Council had an affirmative duty to fund Calumet Township poor relief whether it was to be reimbursed by the township or not. The obligation of the county to be ultimately responsible for poor relief was not initiated by the Distressed Township Act in 1986, but has been in effect since 1935. Therefore the obligations resulting from the distress of Calumet Township, including the vendors such as the utility companies here, were already the obligations of the County Council and did not become void because they exceeded the two percent limit of Calumet Township.

In the Distressed Township Act the legislature provided for the legitimate concern of the county council that it would be obligated for debts incurred by the trustee and over which the council had no control. IC 12-2-14-8 provides that upon a receipt of certification that a township is a distressed township, the governor shall appoint a 4 member management committee to assume

the township trustees duties to oversee the poor. The township trustee serves as an advisor to the management committee and assists the committee in carrying out its duties. The management committee then conducts a complete audit of the trustees office to determine the internal operations of the office and its economical and financial practices. It establishes standards for eligibility for poor relief, payment of claims, contracts for services, leases or rental agreements, capital expenditures, and all other necessary areas. Pursuant to IC 12–2–14–24 there is also established a township poor relief control board, appointed by the governor, with the duty to supervise the township trustee in the administration of poor relief. When the management committee has completed the financial, compliance, economy, and efficiency audits required by IC 12–2–14–11, the management committee makes a report to the control board submitting a plan and its report to the control board. Succeeding sections, IC 12–2–14–28, –29, –30, and –31 then provide for the interaction of the control board and the county council contemplating the adoption of a plan by the county council for the continuation of poor relief to those in need and the settlement of the financial difficulties of the township until the township has again become stable and is removed from the status of a controlled township because of its distress. Thus, the township is in a situation that might be compared to a receivership in that management and control is not left to the discretion of the trustee that might otherwise be in the position of continuing to incur obligations that the county council must satisfy. The county council is in a position through its own plan or one adopted upon submission of the control board that puts it in full knowledge and control of the need for poor relief and its payment to recipients, vendors, and any other necessary related expenditures.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.